Filed 2/24/15  P. v. Taylor CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>RONALD TAYLOR,<br><br>    Defendant and Appellant. | F067190<br><br>(Super. Ct. No. VCF273876)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Tulare County.  Brett R. Alldredge, Judge.

Hassan Gorguinpour, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Kevin L. Quade, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*        Before Kane, Acting P.J., Franson, J. and Peña, J.

A jury convicted appellant Ronald Taylor of resisting an executive officer (count 2/Pen. Code, § 69),[1] making criminal threats (count 3/§ 422), evading a police officer (count 4/Veh. Code, § 2800.2, subd. (a)), misdemeanor leaving the scene of an accident (count 5/Veh. Code, § 20002, subd. (a)), and misdemeanor battery on a police officer (count 6/§ 243, subd. (b)). In a separate proceeding, the court found true an on-bail enhancement (§ 12022.1).

On appeal, Taylor contends his sentence violated: (1) section 654, and (2) his right to due process under the federal Constitution. We will find partial merit to Taylor's first contention and remand to the trial court for resentencing. In all other respects, we affirm.

## FACTS

On September 28, 2012, at approximately 12:00 p.m., California Highway Patrol Officer Greg Stoffel was on patrol traveling eastbound on State Route 190 near Springville when he saw a white pickup truck driven by Taylor speeding in the opposite direction. Stoffel measured the truck's speed at 82 miles per hour with his radar unit and made a U-turn in order to pursue the truck. After the truck passed other vehicles by traveling in a two-way left turn lane, throwing up debris and rocks in the process, the officer activated his overhead lights and sirens. The pursuit continued at speeds of 80 to 100 miles per hour until Taylor slowed down almost to a stop and made a left turn onto Success Valley Drive, a narrow, bumpy road. This allowed Officer Stoffel to use his public address system to yell at Taylor to pull over. Taylor yelled back that he was not going back to jail.

Taylor accelerated to 80 miles per hour and the pursuit continued until both vehicles came to a stop on the roadway at a sharp right turn in the road. Officer Stoffel then got out of his patrol car and stood behind the driver's door of the truck as he spoke

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

2

with Taylor through an open window.[2] Taylor was swearing and yelling at Stoffel. He told the officer that he was not going back to jail and that if Stoffel tried to stop him, Taylor was going to take him out. As Stoffel tried to calm Taylor down, Taylor suggested that they go to the officer's house to resolve the matter.[3] Eventually, Officer Stoffel was able to convince Taylor to pull his truck into a turnout that was adjacent to the road. As both vehicles pulled into the turnout, Officer Stoffel maneuvered his car so that his driver's door was next to Taylor's driver's door.

Officer Stoffel got out of his vehicle and stood next to Taylor's driver's side window talking to Taylor trying to calm him down. Taylor continued saying things including that he was not going to go to jail and that if Stoffel tried to take him, Taylor was going to "mow" him over. Officer Stoffel then tried to end the confrontation by shooting Taylor with a taser. The taser, however, did not shock Taylor because only one probe hit him; instead it enraged him.

Taylor grabbed his steering wheel, turned it to his left and accelerated forward, causing his truck tires to spin and kick up dirt. Taylor's pickup then ran into a pickup driven by Arnold Wingenbach, who had driven onto the scene. The impact caused Wingenbach's truck to turn 90 degrees and pushed it into a ditch next to the road.[4] Meanwhile, Taylor's truck swung around and faced the officer with its wheels spinning and its motor revved up to maximum capacity, but it was unable to move forward. As Officer Stoffel ran to the side to get out of its path, the truck suddenly backed up rapidly and stopped in a field. Officer Stoffel ran to the driver's door and saw Taylor moving around in the vehicle and kicking at the door. Officer Stoffel again began talking with

---

[2] Officer Stoffel recognized Taylor as a tow truck driver who sometimes responded to tow calls.

[3] Officer Stoffel testified that it was common knowledge where he lived in Springville because he parked his patrol car at his home.

[4] Wingenbach suffered bruised or cracked ribs as a result of the collision but did not require medical treatment.

Taylor and at one point Taylor told him, "I am going to kill you," which prompted Officer Stoffel to retrieve his sidearm. Taylor kicked the officer through the window, pushing him back, and eventually managed to get out of the truck. Officer Stoffel put his gun away and unsuccessfully attempted to grab one of Taylor's hands to handcuff him. Taylor ran towards Success Valley Drive and Officer Stoffel ran to his patrol vehicle. Officer Stoffel caught up to Taylor in the driveway of a house where Taylor gave up and was eventually handcuffed with the help of a man who lived there. While being walked to Officer Stoffel's vehicle, Taylor broke away and began running, but he was quickly apprehended.

Taylor was out of custody on his own recognizance when he committed the underlying offenses in this matter.

On May 2, 2013, the court sentenced Taylor to an aggregate prison term of four years eight months: a two-year term on his resisting an executive officer conviction (count 2), a two-year on-bail enhancement in that count; a consecutive eight-month term (one third the middle term of three years) on his criminal threats conviction (count 3); a concurrent two-year term on his evading a police officer conviction (count 4); time served on his misdemeanor convictions for leaving the scene of an accident (count 5) and battery on a police officer (count 6); and a concurrent two-year term on his possession of methamphetamine conviction in an unrelated case.

## DISCUSSION

Taylor contends that because all of his offenses occurred during an indivisible course of conduct whose objective was to avoid arrest, the court violated section 654 when it imposed punishment in the instant case on all of his convictions except his conviction in count 2 for resisting an executive officer with force. Taylor further claims that his punishment was excessive because his sentence violated section 654, that excessive punishment violates the due process guarantee of the federal constitution, and

4

therefore his punishment violated his federal constitutional right to due process. We will find partial merit to Taylor's claim that his sentence violated section 654.

Section 654, subdivision (a) provides, in relevant part:

"An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Our Supreme Court has "often said that the purpose of section 654 'is to insure that a defendant's punishment will be commensurate with his culpability.'" (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211 (*Latimer*).) "Section 654 does not allow any multiple punishment, including either concurrent or consecutive sentences." (*People v. Deloza* (1998) 18 Cal.4th 585, 592.)

"Case law has expanded the meaning of section 654 to apply to more than one criminal act when there was a course of conduct that violates more than one statute but nevertheless constitutes an indivisible transaction." (*People v. Hairston* (2009) 174 Cal.App.4th 231, 240.) In determining whether a course of conduct consisting of multiple acts is indivisible, we look to the "defendant's intent and objective." (*People v. Harrison* (1989) 48 Cal.3d 321, 335.) "[I]f all of the offenses were merely incidental to, or were the means of accomplishing or facilitating one objective, defendant may be found to have harbored a single intent and therefore may be punished only once." (*Ibid.*) On the other hand, "[i]f [the defendant] entertained multiple criminal objectives which were independent of and not merely incidental to each other, he may be punished for independent violations committed in pursuit of each objective even though the violations shared common acts or were parts of an otherwise indivisible course of conduct." (*People v. Beamon* (1973) 8 Cal.3d 625, 639.)

"[D]ecisions ... have refined and limited application of the 'one intent and objective' test, in part because of concerns that the test often defeats its own purpose because it does not necessarily ensure that a defendant's punishment will be

5

commensurate with his culpability." (*People v. Kwok* (1998) 63 Cal.App.4th 1236, 1253 (*Kwok*).) Thus, as our Supreme Court noted in *Latimer*, cases decided since the intent and objective rule was announced in *Neal v. State of California* (1960) 55 Cal.2d 11 have "limited the rule's application in various ways," including, in some cases, by "narrowly interpret[ing] the length of time the defendant had a specific objective, and thereby found similar but consecutive objectives permitting multiple punishment." (*Latimer*, *supra*, 5 Cal.4th at pp. 1211-1212, italics omitted.) These cases include *People v. Louie* (2012) 203 Cal.App.4th 388 (*Louie*), where the court rejected a challenge based on section 654 to the imposition of sentence on multiple offenses, stating: "[W]here a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective. [Citation.] *If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed*." (*Louie, supra,* 203 Cal.App.4th at p. 399, italics added.)

> "[S]ection 654 serves to match a defendant's culpability with punishment. [Citation.] Whether the provision 'applies in a given case is a question of fact for the trial court, which is vested with broad latitude in making its determination. [Citations.] Its findings will not be reversed on appeal if there is any substantial evidence to support them. [Citations.] We review the trial court's determination in the light most favorable to the respondent and presume the existence of every fact the trial court could reasonably deduce from the evidence.'" (*People v. Vang* (2010) 184 Cal.App.4th 912, 915-916.)

> "The Supreme Court has explained that section 69 'sets forth two separate ways in which an offense [of resisting an executive officer] can be committed. The first is attempting by threats or violence to deter or prevent an officer from performing a duty imposed by law; the second is resisting by force or violence an officer in the performance of his or her duty.' [Citations.] 'The two ways of violating section 69 have been called "attempting to deter" and "actually resisting an officer."'" [Citations.]

> "The two types of offenses have different elements. [Citation.] For example, '[t]he first type of offense can be established by "[a] threat, unaccompanied by any physical force." [Citations.] ... For the second type of offense, the resistance must include "force or violence," ....'" (*People v. Rasmussen* (2010) 189 Cal.App.4th 1411, 1417-1418.)

6

Here, the resisting an executive officer offense was prosecuted under both theories: the information alleged the resisting an executive officer offense under both theories;[5] the court instructed on both theories;[6] and during closing arguments, the prosecutor argued Taylor resisted Officer Stoffel each time he *threatened* Officer Stoffel and when he *kicked* him. The prosecutor, however, also argued that Taylor was guilty of making criminal threats because of the same threats he made against Officer Stoffel. Since the conduct underlying Taylor's conviction for making criminal threats also could have served as the basis for the jury convicting Taylor of resisting an executive officer, the court violated section 654 when it imposed a consecutive eight-month term on Taylor's conviction for making criminal threats. (§ 654, subd. (a) [multiple punishment may not be imposed for a single "act or omission"].)

Further, during closing arguments, the prosecutor argued that Taylor was guilty of battery of a police officer because he kicked Officer Stoffel while exiting his truck through the driver's window which, as noted, was the same conduct that the prosecutor argued also proved the resisting an executive officer offense. Again, since the prosecutor's argument allowed the jury to convict Taylor of two offenses based on Taylor's singular act of kicking the officer, the court violated section 654 when it

---

**5** The information alleged that the crime of resisting an executive officer "was committed by [Taylor], who did unlawfully attempt by means of *threats and violence* to deter and prevent [Officer Stoffel], who was then and there an executive officer, from performing a duty imposed upon such officer by law, and did knowingly resist by the use of force and violence said executive officer in the performance of his/her duty." (Italics added.)

**6** The court instructed the jury that to prove Taylor was guilty of resisting an executive officer, the People had to prove that Taylor "willfully and unlawfully *used violence or a threat of violence* to try to prevent or deter an executive officer from performing the officer's lawful duty." (Italics added.)

7

imposed punishment on Taylor's battery offense by sentencing him to time served on that offense.

The remainder of Taylor's sentence, however, did not violate section 654. The court reasonably could have found that Taylor committed the evading a peace officer offense by his conduct prior to stopping at the sharp turn on Success Valley Road. Further, since Taylor had ample time to reflect on and renew his intent to escape during the over 6.7 miles he drove before stopping there, the court also could reasonably have found that his evading offense was a separate crime from the crimes he committed after that point. (*Louie*, *supra*, 203 Cal.App.4th p. 399.) Additionally, each time he threatened and/or kicked Officer Stoffel, Taylor created a new and greater risk of a violent confrontation than Taylor's evading offense alone because it increased the possibility that Taylor would assault Officer Stoffel and/or that the officer would have to use deadly force to subdue Taylor. (*Kwok, supra,* 63 Cal.App.4th at p. 1256 [§ 654 found not to bar punishment for two burglary offenses that constituted a course of conduct, in part, because each entry into the residence "created a separate and distinct risk of violent confrontation"].) Thus, we conclude that the court did not violate section 654 when it imposed a concurrent term on Taylor's evading a peace officer offense.

The court also could reasonably have found that after he struck Wingenbach's truck, Taylor had time to reflect and to desist from his unlawful conduct as he sat, stuck in place, revving his truck's engine to its maximum capacity. (Cf. *People v. Trotter* (1992) 7 Cal.App.4th 363, 368 [§ 654 did not bar punishment for two of three assaults where the defendant shot at police three times from a vehicle, the second shot followed the first by a minute, and the third shot followed the second by a few seconds, which allowed the defendant to reflect and consider his next action before firing each shot].) Further, by driving away in reverse with his engine revving at maximum capacity, Taylor exacerbated the risk of harm to everyone involved because he could have lost control of his truck and seriously injured someone, including himself. And by continuing to flee

when his car stalled, he prevented Officer Stoffel from immediately rendering aid to Wingenbach. Thus, the court reasonably could have found that the conduct underlying Taylor's leaving the scene of an accident offense made him more culpable than someone who was trying to avoid apprehension by an officer who did not leave the scene of an accident. Accordingly, we conclude that the court did not violate section 654 when it sentenced Taylor to time served on his misdemeanor conviction for failing to stop at the scene of an accident.[7]

## **DISPOSITION**

The sentences imposed on counts 4 and 6 are stayed and the matter is remanded to the trial court for resentencing. In all other respects the judgment is affirmed.

---

[7] In view of our conclusion that only two of the terms imposed on Taylor's convictions violated section 654 and our decision to stay the two terms that did, we reject Taylor's claim that his sentence was excessive and violated his federal constitutional right to due process.

9