Filed 7/29/15  P. v. Deering CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TONY WAYNE DEERING,<br><br>        Defendant and Appellant. | A143086<br><br>(Contra Costa County<br>Super. Ct. No. 51401900) |

Defendant Tony Wayne Deering appeals a judgment entered after a jury convicted him of inflicting corporal injury on a cohabitant, assault by force likely to produce great bodily injury, making criminal threats, and false imprisonment by violence.[1]  In sentencing Deering, the trial court imposed a five-year sentence for the corporal-injury conviction and consecutive sentences for the criminal-threats and false-imprisonment convictions, for a total sentence of six years and four months.  On appeal, Deering argues that he is entitled to be resentenced because (1) the trial court failed to stay the criminal-threats and false-imprisonment sentences under section 654, which bars multiple punishments for an indivisible course of conduct; (2) the trial court abused its discretion in imposing the consecutive sentences; and (3) his trial counsel was ineffective to the

---

[1] All statutory references are to the Penal Code.  The corporal-injury conviction was under section 273.5, subdivision (a), the assault conviction was under section 245, subdivision (a)(4), the criminal-threats conviction was under section 422, and the false-imprisonment conviction was under sections 236 and 237, subdivision (a).

extent sentencing issues were not preserved for review. We find none of these arguments persuasive, and we affirm.

## BACKGROUND

The People's case was largely established by the testimony of the victim, Sheila Lewis. Lewis started dating Deering about six or seven months before New Year's Eve 2013. While they were dating, he often spent weekends at her house in San Pablo and had moved in about 18 days before New Year's Eve. Lewis and Deering planned to attend a New Year's Eve party, but Lewis began to develop a migraine headache in the afternoon of December 31. At around 9:00 p.m. Lewis told appellant that the pain was too great and that she needed to go to the hospital for treatment. Deering refused to take her so she drove herself to the hospital. At the hospital, she was treated with morphine due to the severity of the migraine. Because Lewis had been to the hospital for migraines a couple of times recently, hospital staff asked her if she was "under stress" or "being abused."

Lewis arrived home from the hospital some time after 1:00 a.m. on January 1, 2014. Deering was in the living room having a drink and had a bottle of Jack Daniels on the table next to him. He began questioning Lewis about how long she had been gone and why she had ruined "the arrangement for the New Year celebration." Lewis told Deering that hospital staff had asked her if she was being abused, and Deering's reaction—the look on his face and tone of his voice—made her fearful. Deering accused Lewis of lying to him about where she had been and demanded she tell the truth. When Lewis raised her arm to show him the hospital wristband, Deering struck her hard in her right eye with his open hand. The force of the blow knocked her back into her chair. Her eye hurt, and she wanted to go to the bathroom to see what it looked like and clean it up, but Deering told her to stay where she was until she "t[old] the truth." Lewis decided to "just shut up" and not move in the hope that Deering would not hit her again.

Deering then accused Lewis of "tuning him out," having a "wandering eye," and not paying enough "attention to him." He then struck her again in the right eye with his open hand, and he told her that hitting with an open hand was "not abuse" but using a

2

"fist is abuse." Lewis told Deering that "hitting any way is a form of abuse," and he did not like her comment. He again accused Lewis of lying and said she should scream because "the neighbors need to hear." Sometime later, he hit her a third time, striking her under her nose with the heel of his hand and said, "[The] bone . . . will go up with forceful pressure and it would . . . instantly kill you." Deering then told Lewis he was going to beat her "every hour until [she told him] the truth." She became afraid that he might kill her. She thought if she just sat and was "quiet[,] the incident [would] stop. You know, praying the daylight come[,] . . . figuring a way to get out."

At some point, Lewis told Deering she needed to use the bathroom. He denied permission, but she got up anyway and went into the bathroom adjacent to the living room. Just as she was finishing in the bathroom, Deering came in and started kicking her; he kicked her several times on her right thigh and buttocks with his work boots. Lewis began to cry and begged him to stop kicking her. Deering continued to kick her, but after a couple of minutes went back to the living room and resumed drinking Jack Daniels. After Lewis returned to the loveseat, Deering again struck her in the right eye. As before, he hit her with a full open hand, hitting her not just with his fingers but also with the palm and heel of his hand. Lewis continued to deny Deering's accusation that she was lying to him. Infuriated by the denial, Deering put one of his hands on her neck, applied pressure, and began to choke her, stating he could "snap" her neck and "kn[e]w the pressure points" to kill her. He then pushed her back in the loveseat and kneeled across her chest. With his knees on her chest, he said, "Under the pressure that I've been putting you under, you about dead anyway."

The ordeal lasted five hours, and during it Lewis was unable to call 911 because Deering kept her cell phone in front of him. He told her she could not escape because he had the cell phone and car key and that he did not want her to touch the cell phone. He grabbed the index and middle fingers of her left hand and "mashed [them] until they turned purple," and grabbed her wrist and arm and "tried to break it." He threatened her that if she tried to use the phone, he would continue hurting her and break her arm,

3

adding that if she was in a cast she would be unable continue her work as a culinary student and chef.

In the morning, Deering told Lewis to "make me breakfast." She saw this as an opportunity to escape, so she fixed breakfast and took it to him. As she was coming and going from the kitchen, Lewis was able to get her car keys. She then went out the back door to her vehicle and drove straight to the police station. She reported the incident to the police, who took photographs of her injuries, and drove herself to the hospital.

Police Officer Jesse Rutland testified at trial that he interviewed Lewis on the morning of January 1, 2014. After he took photographs of her injuries, Rutland went to Lewis's residence and found Deering, who was wearing a pair of tan work boots. He also found a bottle of Jack Daniels on the living room table, and the bottle was nearly empty.

The prosecution also introduced evidence of prior acts of domestic violence by Deering through the testimony of his wife, Tanya Williams Deering, who testified she "disappeared" about 18 months before the trial because Deering had been physically abusive to her. Tanya testified about three incidents. The first occurred at a restaurant in Albany. She got up to leave the restaurant, and he asked for a ride. When she declined, Deering "started going off" physically and verbally. He started hitting and trying to grab her. She ran into the kitchen where restaurant employees locked the door and called the police. She suffered bruises on her face and neck. Police came to the scene and took her statement.

The second incident occurred in March 2010 at a motel in Fremont. Deering came into their room with a bottle of brandy and some beer. He appeared to be drunk and "probably was high." Deering and Tanya were talking about another female motel tenant when Deering became angry, yelled at Tanya, and tried to choke her. She ran to the motel office and told the manager to close and lock the door. Deering started shaking the door. Eventually, police arrived and took him to jail.

The last incident happened at the couple's apartment in Hayward. Deering had been drinking and was "hollering and screaming because he misplaced his wallet." He accused Tanya of having the wallet, and he then started "grabbing" and "fighting" with

4

her. He threw some potted plants at her, yelling "I'm going to kill you." He grabbed her by the neck and punched her four or five times in the head and face. Just then the landlord walked past the apartment, saw what was happening, and called the police.

The defense presented no witnesses at trial. Following its deliberations, the jury found Deering guilty of inflicting corporal injury on a cohabitant, assault by force likely to produce great bodily injury, making criminal threats, and false imprisonment by violence. The court ordered the probation office to prepare a report prior to sentencing.

The probation report notes that Deering declined to assist in the preparation of the report by answering questions or giving personal history. But he stated that "he was tired and he believes he has served enough time for such a minor incident. He believes that he should be released on the day of sentencing and reports that he has lost over 60 pounds since his incarceration. He added that he was interviewed by a residential alcohol treatment program, but he is not in need of their services." The report submitted the following circumstances in aggravation for the court's sentencing consideration: (1) the crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness; (2) Deering's violent conduct indicated a serious danger to society; and (3) Deering's prior adult convictions or sustained juvenile petitions were numerous or of increasing seriousness. (Cal. Rules of Court, rule 4.421(a)(1) and (b).) [2] The report found no circumstances in mitigation under rule 4.423.

The People acknowledged that section 654 applied to the assault conviction because it arose from the same act that would be punished for the corporal-injury conviction. But in its sentencing memorandum, the People asked the court to impose the aggravated sentence of five years for the corporal-injury conviction, along with consecutive sentences of one-third the midterm for both subordinate convictions of criminal threats and false imprisonment, for a total sentence of six years and four months.

---

[2] Further citation to the California Rules of Court is to the rule number only.

The People argued that imposition of the upper term for the corporal-injury conviction was justified because of the aggravating factors under rule 4.414(a): the crime was cruel, vicious and callous; Lewis was vulnerable due to her age, her relationship with Deering, and her migraine affliction; Deering unlawfully prevented her from calling the police by depriving her of her cell phone during the ordeal; and he took advantage of a position of trust to commit the offense. The People also argued that the upper term was justified because of the aggravating factors under rule 4.414(b): Deering had five prior domestic violence convictions involving at least two different female victims; his violent conduct indicated a serious danger to society, particularly to women; he failed to express any remorse for his abuse; and he was likely to be a danger to others if not imprisoned because he was a "chronic women beater who has demonstrated a viciousness that is very likely to be repeated on any woman in society who has the misfortune of entering a relationship with him."

At the sentencing hearing held on August 29, 2014, the court noted it had reviewed the probation report and the People's sentencing memorandum, as well as the sentencing memorandum submitted by Deering requesting a probationary sentence. The court stated, "[I]n reviewing the probation report, I'm finding there are circumstances in aggravation: [¶] The factors related to the crime[:] the crime involved great violence and other acts disclosing a high degree of cruelty, viciousness, and callousness. The factors related to the defendant: [t]he defendant has engaged in violent conduct which indicates a serious danger to society. The defendant's prior convictions as an adult are numerous and of increasing seriousness. . . . [¶] . . . I am denying probation based on the stated factors that I've just mentioned." Thereafter, the court imposed the aggravated term of five years in state prison for the corporal-injury conviction, a consecutive term of eight months (one-third of the midterm) for the criminal-threats conviction, and an additional and consecutive term of eight months (one-third of the midterm) for the false-imprisonment conviction, for a total term of six years and four months. Deering did not object to the imposition of sentence for the criminal-threats or false-imprisonment convictions.

6

*A.     Trial Court Did Not Err in Declining to Stay the Sentences Imposed for the Criminal-threats and False-imprisonment Convictions Under Section 654.*

Deering first contends the trial court erred by not staying his sentences for criminal threats and false imprisonment under section 654, which precludes multiple punishments for a single act or indivisible course of conduct punishable under more than one criminal statute. Although Deering failed to raise this argument below, we conclude that it is nonetheless cognizable on appeal because a sentencing court "acts in excess of its jurisdiction and imposes an unauthorized sentence when it fails to stay execution of a sentence under section 654." (*People v. Hester* (2000) 22 Cal.4th 290, 295.) But although the argument is cognizable, we conclude it lacks substantive merit. In considering the claim, we must review the trial court's findings for sufficiency of the evidence in the light most favorable to the judgment, and we presume in support of the trial court's findings the existence of every fact the trial court could reasonably deduce from the evidence. (*People v. Green* (1996) 50 Cal.App.4th 1076, 1085.)

Section 654 provides, "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) Determining whether a course of conduct is divisible and gives rise to more than one act under section 654 depends on the intent and objective of the defendant. (See *Neal v. State of California* (1960) 55 Cal.2d 11, 19, limited in part as explained in *People v. Correa* (2102) 54 Cal.4th 331, 341.) "[I]f all of the offenses [are] merely incidental to, or [are] the means of accomplishing or facilitating one objective, [the] defendant may be found to have harbored a single intent and therefore may be punished only once. [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335; accord *People v. Perez* (1979) 23 Cal.3d 545, 551; *People v. Ratcliffe* (1981) 124 Cal.App.3d 808, 817 [if "an offense is committed as a means of committing another offense," defendant had "one criminal intent or objective" and section 654 applies].) Conversely, "criminal acts committed

7

pursuant to independent multiple objectives may be punished separately even if they share common acts or are part of an indivisible course of conduct." (*People v. Surdi* (1995) 35 Cal.App.4th 685, 689; see also *People v. Trotter* (1992) 7 Cal.App.4th 363, 366-368 (*Trotter*).) It is the sentencing court that determines a defendant's intent and objective under section 654. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 162.)

Moreover, the intent-and-objective test must not define intent too broadly or amorphously because that " 'would impermissibly "reward the defendant who has the greater criminal ambition with a lesser punishment." ' " (*People v. Morelos* (2008) 168 Cal.App.4th 758, 769.) The overarching purpose of section 654 is to ensure that punishment will be commensurate with a defendant's culpability. (*People v. Latimer* (1993) 5 Cal.4th 1203, 1211.) Accordingly, "where a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective. [Citation.] If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed. [Citation.]" (*People v. Louie* (2012) 203 Cal.App.4th 388, 399.)

Deering argues that the trial court erred in declining to stay his convictions for criminal threats and false imprisonment because he "had but one" overriding objective during his abuse of Lewis—namely, "to force Lewis to tell him 'the truth' by any means available." He claims it is "absolutely clear that the criminal threats and false imprisonment were part and parcel" of the infliction of corporal injury "in an effort to instill fear in Lewis such that she would not attempt to escape. This criminal conduct was incident to one objective, that is, to confine Lewis so that appellant could continue his assaultive behavior until Lewis told 'the truth.' "

We are not persuaded. To begin with, Deering defines his intent far too broadly for purposes of section 654. On this question, *People v. Ratcliffe, supra,* provides helpful guidance. There, the appellant contended that under section 654 he could not be punished for rape and oral copulation and also be punished for kidnapping and false imprisonment. (*People v. Ratcliffe, supra,* 124 Cal.App.3d at p. 814.) The appellate court disagreed, rejecting the contention that section 654 applied because the "sole intent

8

and objective in committing the crimes . . . was to seek revenge because [the victim] had rejected him." (*Ratcliffe,* at p. 816.) "Nor is section 654 applicable," the court added, "merely because appellant's broad, although sole, intent and objective was to obtain sexual gratification." (*Id.* at pp. 816-817.)

We likewise conclude that section 654 does not apply merely because Deering assigns a single, broad objective to his five-hour brutalization of the victim—attempting to make her "tell the truth." (Cf. *People v. Harrison, supra,* 48 Cal.3d at pp. 327, 336 [rejecting the defendant's contention that two of his three convictions for digital penetration "committed during a brief 'continuous' assault upon a struggling victim" should be stayed "because he harbored 'one criminal intent' within the meaning of section 654—to achieve sexual gratification . . . ."].) None of the three convictions giving rise to Deering's sentence was "merely incidental to, or [was] the means of accomplishing or facilitating" any other offense, such as to warrant our conclusion that he "harbored a single intent and therefore may be punished only once. [Citation.]" (*Harrison,* at p. 335; see also *People v. Ratcliffe, supra,* 124 Cal.App.3d at p. 817 [if "an offense is committed as a means of committing another offense," defendant had "one criminal intent or objective," and section 654 applies].) Indeed, the principal offense of inflicting corporal injury on a cohabitant was completed the first time Deering struck Lewis on the face and in the eye. Yet, for five more hours he forcibly detained her, perpetrated multiple acts of violence against her, and threatened her repeatedly with physical harm, including death. The principal offense did not facilitate, nor was it facilitated by, the subsequently committed offenses of false imprisonment by violence and criminal threats.

Even assuming Deering perpetrated the crimes with the sole objective of making her "tell the truth," his course of conduct was "divisible in time" and gives rise "to multiple punishment even if the acts are directive to one objective." (*People v. Louie, supra,* 203 Cal.App.4th at p. 399 ["If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed. [Citation.]"].) Lewis's ordeal began after she returned

9

from the hospital between 1:00 and 1:30 a.m. Deering was angry because Lewis "had ruined the arrangement for the New Year celebration" and because hospital staff had asked her if she was being abused. He forcefully hit Lewis across her face with an open hand. He thereafter methodically struck, kicked, threatened, and beat her every hour or so, and his conduct became "more egregious." (*Trotter, supra,* 7 Cal.App.4th at p. 368.) After striking her across the face, Deering escalated his attacks by hitting Lewis under her nose with the heel of his hand, kicking her repeatedly while she was in the bathroom, throttling her, pinning her down with his knees and crushing her chest, threatening to break her arm, and threatening to kill her.

As in *Trotter, supra,* where the defendant fired multiple shots at a pursuing police car, this is "not a case where only one volitional act gave rise to multiple offenses. . . . All . . . assaults were volitional and calculated, and were separated by periods of time during which reflection was possible. None was spontaneous or uncontrollable. '[D]efendant should . . . not be rewarded where, instead of taking advantage of an opportunity to walk away from the victim, he voluntarily resumed his . . . assaultive behavior.' [Citation.]" (*Trotter, supra,* 7 Cal.App.4th at p. 368; see also *People v. Louie, supra,* 203 Cal.App.4th at p. 399 [because "course of conduct consisting of two criminal acts was incident to several objectives and was separated in time by an interval sufficient to allow [defendants] to reflect and renew their intent, the court properly sentenced defendants for the crimes of arson and dissuading a witness"].)

We conclude that to find section 654 applicable to the facts here, which involved multiple and distinct acts of violence, threats, and restraint, "would violate the very purpose for the statute's existence " by sanctioning a penalty that would not be commensurate with the crimes. (*Trotter, supra,* at p. 368.)

B.      *Trial Court Did Not Abuse Its Discretion in Imposing Consecutive Sentences.*

Deering next contends that even if section 654 is inapplicable, the trial court nevertheless abused its discretion by imposing consecutive sentences for the false-imprisonment and criminal-threat convictions. We conclude, however, that Deering

10

forfeited this issue by failing to object to the sentences when they were imposed. (See *People v. Scott* (1994) 9 Cal.4th 331, 355-356 (*Scott*) [argument that the trial court "abused its discretion . . . in imposing consecutive terms" challenges the "manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons [and] cannot be raised for the first time on appeal"].)

C.     *The Record Fails to Demonstrate that Deering's Trial Counsel Was Ineffective.*

Anticipating our forfeiture ruling, Deering contends that any failure of his trial counsel to preserve the consecutive-sentencing issue for appellate review constituted ineffective assistance of counsel. Again, we disagree.

In *Scott, supra,* the court foresaw that defendants would likely raise on habeas corpus "any sentencing claim deemed procedurally barred on direct appeal[,] . . . presumably under the rubric of ineffective assistance of counsel." (*Scott, supra,* 9 Cal.4th at p. 356, fn. 18.) But the court reiterated that "the standards for extraordinary relief based on a claim of ineffective assistance of counsel are familiar *and stringent*. Both incompetence and prejudice must be shown."[3] (*Ibid.,* italics added.) "[A] defendant must show that . . . counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." (*People v. Riel* (2000) 22 Cal.4th 1153, 1175.) And prejudice is shown when " 'there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." [Citations.]' [Citation.]" (*In re Avena* (1996) 12 Cal.4th 694, 721.) Here, Deering fails to show either incompetence or prejudice.

---

[3] Even when properly raised on direct appeal, a challenge to the imposition of consecutive sentences faces a high hurdle. "In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citation.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Bradford* (1976) 17 Cal.3d 8, 20.)

On the question of incompetence, a trial counsel's decision whether to object is inherently tactical, and a failure to object rarely establishes ineffective assistance. (*People v. Riel, supra,* 22 Cal.4th at. p. 1197.)  Nothing in the record here demonstrates that this case is one of those rare instances in which ineffective assistance is established. Where, as here, "the record on appeal sheds no light" on why counsel failed to object to consecutive sentencing, we cannot "speculate that trial counsel's failure . . . resulted from incompetence . . . .  [Rather, t]o justify relief, appellant must be able to point to something in the record showing that counsel had no satisfactory rationale for what was done or not done." (*People v. Pope* (1979) 23 Cal.3d 412, 436, fn. 16, abrogated on another point as acknowledged in *People v. Berryman* (1993) 6 Cal.4th 1048, 1081, fn. 10.)

Deering attempts to show that his trial counsel had no satisfactory rationale for failing to object to consecutive sentencing by reiterating arguments he made in connection with his section 654 claim.  He contends that consecutive sentencing was not justified under the criteria in rule 4.425 by asserting that the crimes had the same objective, did not involve separate acts of violence, and indicated a single period of aberrant behavior.[4]  But we have already rejected these arguments for reasons we have discussed.  The record supports imposition of consecutive sentencing under the criteria set forth in rule 4.425 because the crimes involved separate acts of violence, restraint, and

---

[4] Rule 4.425 states, "Criteria affecting the decision to impose consecutive rather than concurrent sentences include:  [¶] **(a) Criteria relating to crimes**  [¶] Facts relating to the crimes, including whether or not:  [¶] (1) The crimes and their objectives were predominantly independent of each other; [¶] (2) The crimes involved separate acts of violence or threats of violence; or [¶] (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.  [¶] **(b) Other criteria and limitations**  [¶] Any circumstances in aggravation or mitigation may be considered in deciding whether to impose consecutive rather than concurrent sentences, except:  [¶] (1) A fact used to impose the upper term; [¶] (2) A fact used to otherwise enhance the defendant's prison sentence; and [¶] (3) A fact that is an element of the crime may not be used to impose consecutive sentences."  (Boldface in original.)

threats.  (Rule 4.425(a)(2).)  In sum, Deering fails to demonstrate trial counsel was incompetent for failing to object to consecutive sentencing.

He also fails on the question of prejudice because there is simply no " 'reasonable probability' " on this record that the trial court would not have imposed consecutive sentences had counsel objected.  (*In re Avena, supra,* 12 Cal.4th at p. 721.)  The court stated the offense conduct was "appalling" and it was "horrified listening to what [the victim] went through," noting Deering "tormented" and "abused her."  The court was similarly dismayed at Deering's complete lack of remorse for his actions, stating that it was "just astounding that you . . . think that you deserve to walk out of jail today" and commenting that "[y]ou have taken yourself into a situation where finally somebody is going to say enough is enough."  The court had sufficient legal grounds to impose consecutive sentences, and it clearly believed that Deering's offenses warranted imposition of a severe sentence.  Deering fails to demonstrate he was prejudiced by his trial counsel's failure to object to consecutive sentencing.

DISPOSITION

The judgment is affirmed in all respects.

_____

Humes, P. J.

We concur:


_____

Margulies, J.


_____

Banke, J.


*People v. Deering* (A143086)

14