[No. C062821. Third Dist. Feb. 7, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
MICHAEL HONG LOUIE, Defendant and Appellant.

THE PEOPLE, Plaintiff and Respondent, v.
SORIYAA EK, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I through III of the Discussion.

COUNSEL

Stephen M. Lathrop, under appointment by the Court of Appeal, for Defendant and Appellant Michael Hong Louie.

David P. Lampkin, under appointment by the Court of Appeal, for Defendant and Appellant Soriyaa Ek.

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Charles A. French and Craig S. Meyers, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BLEASE, Acting P. J.**—The sentencing portion of this opinion highlights the difficulty courts face reconciling Penal Code section 654 with Penal Code section 186.22, subdivision (a), the substantive gang offense. Section 654 prohibits punishing an act or omission under more than one provision of law. Section 186.22, subdivision (a) imposes state prison time for anyone who actively participates in a criminal street gang and willfully promotes, furthers, or assists in felonious criminal conduct by members of the gang. The difficulty arises because the same act results in a conviction for the underlying "felonious criminal conduct" and for the substantive gang offense. Although a defendant may be convicted on multiple theories for the same act, a defendant may not be subjected to multiple punishments for the same act.

Defendants Michael Hong Louie and Soriyaa Ek, both validated gang members, were tried and convicted on multiple counts after they set fire to the apartment of a woman who repeatedly reported gang activity in her neighborhood. Just prior to setting fire to the apartment, Ek called the victim a "cop caller," and told her, "[y]ou're going to get yours." After the fire, but before any arrests had been made, Ek returned to the victim's new apartment and threatened her again.

Defendants were charged with the substantive crimes of attempted murder (Pen. Code, §§ 664, 187, subd. (a)), street terrorism (Pen. Code, § 186.22, subd. (a)), arson of an inhabited structure (Pen. Code, § 451, subd. (b)), dissuading a witness by force or threat (Pen. Code, § 136.1, subd. (c)(1)), and criminal threats (Pen. Code, § 422). The amended information also charged street terrorism as an enhancement to all counts, save the substantive street terrorism count. (Pen. Code, § 186.22, subd. (b)(1).)[1]

The jury found defendants guilty of all charges except the attempted murder charge, to which the jury rendered a verdict of not guilty. The jury found the street terrorism enhancements true.

The trial court sentenced Ek to a term of 14 years to life in prison plus nine years four months. The court sentenced Louie to a term of seven years to life in prison plus five years.

Defendants raise several arguments with regard to sentencing. First, Ek argues that he should not have received a stayed sentence for the street terrorism enhancement to count 3, dissuading a witness, because the sentence was unauthorized. The stayed five-year enhancement was an alternative punishment to the seven-year-to-life term Ek received for dissuading a witness. Therefore, the stayed five-year enhancement should be stricken.

Next, both defendants claim that their sentences for the substantive crime of street terrorism (eight months for Ek and a two-year concurrent term for Louie) should be stayed because their sentences for street terrorism were based on the underlying acts of threatening the victim and burning her apartment, acts for which they received punishment upon their conviction for arson and dissuading a witness.

 We agree that defendants' sentences for the substantive crime of street terrorism violates section 654, but we disagree on the reason. Because we concur in the result, we shall strike the sentence of each defendant for the substantive crime of street terrorism.

The majority concurring opinion holds that punishment under the substantive gang offense was barred because the gang aspect of defendants' actions was punished when their sentences were enhanced pursuant to section 186.22, subdivision (b), the gang enhancement. The majority reasons that the purpose of section 654 is to insure that defendants' punishment was commensurate with their culpability, and that the gang enhancement, which resulted in this case in indeterminate life terms, provided punishment commensurate with their culpability.

---

[1] Further references to an unidentified section are to the Penal Code.

The concurring opinion reasons that because membership in a gang is a status and not an act, conviction of the substantive gang offense depends upon a defendant's gang participation resulting in a felonious act. This necessarily means that the same felonious act is being punished in the underlying felony and the substantive gang offense. Here, defendants were separately punished for the felonies arson and dissuading a witness, and cannot be punished again for those acts because of their gang affiliation when they committed the acts.

Defendants also claim that section 654 dictates that the punishment for arson be stayed because their criminal actions on the night of the fire constituted a course of conduct incident to only one objective. We shall conclude that multiple objectives were proven to have motivated the criminal acts (the threat and the burning of the apartment) whether viewed as two separate acts or one course of conduct. Thus, defendants may be separately punished for arson and dissuading a witness.

Finally, Ek argues that he was improperly sentenced for dissuading a witness and for making a criminal threat when he returned to the victim's apartment after the fire and threatened her. We agree that Ek cannot be punished twice for this act, and shall stay the eight-month sentence imposed for making a criminal threat.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 6, 2007, Christina McDonald was living at 4404 Manchester Avenue, apartment No. 28 in Stockton, California. She lived with her fiancé Eric Lamarra, her infant daughter, and Eric's parents Rocky Lamarra and Rebecca Nagy. Around 11:40 p.m. McDonald was watching television in the living room with her daughter. Her daughter was in a crib between the couch and the window. Eric was at another apartment, and his parents were asleep upstairs.

McDonald heard voices outside the apartment. She went to the door and opened it. She saw two individuals. She recognized them, but did not know their names. She had seen them hanging around with the usual bunch of troublemakers. One of them had "very noticeable gold teeth" and was wearing a bright orange sweatshirt. The other one, who was thinner, was wearing a black sweatshirt. He was later identified as Louie. Both men glared at her. The man in the orange sweatshirt, later identified as Ek, approached her and said, "Fuck you. You're a cop caller. Go inside, bitch. You're going to get yours . . . ."

McDonald closed the door. She debated whether or not to call the police, and finally decided just to sit down and forget about it. She then heard breaking glass and saw her curtains go up in flames. She ran to her daughter's crib and picked her daughter up, burning her hand on the metal crib because it was so hot. She managed to wake up everyone and get them out of the apartment through the back door. A neighbor had to cut the back fence so they could escape.

Emily Un, McDonald's apartment manager, was driving toward the complex around midnight. She saw defendants running out of the entrance to the complex. She recognized them because they were always disturbing her tenants, pulling out the no trespassing signs, and writing on the walls. Ek was wearing an orange sweatshirt, orange cap, and khaki pants. He was carrying a yellow bucket. Louie was wearing a black sweatshirt, black jeans, and a black hat. As Un walked to her apartment, she saw defendants behind one of the vacant apartments. She told them to get out and asked what they were doing there.

Un started walking toward defendants. They both took off their sweatshirts, dropped them, and kept running. Un smelled gasoline on the shirts. Defendants took the yellow bucket with them. Un turned around and saw smoke coming from the apartments and heard the sirens.

The discarded sweatshirts tested positive for the presence of gasoline, as did burnt debris from the apartment fire. The sweatshirts were also tested for DNA evidence. The orange sweatshirt contained one major and two minor DNA contributors. The profile of the major contributor matched Ek's profile. The black sweatshirt also contained a mixture of DNA, but it was not possible to determine a major and minor contributor. Louie was determined to be a possible contributor to the DNA on the black sweatshirt, although statistically the match was not as strong as for Ek.

An arson investigator determined that the fire originated near the front doorway of McDonald's apartment. The fire traveled in from the outside. The fire was caused when an open flame, spark, or hot surface was used to ignite a liquid to start the fire.

McDonald testified that her neighborhood was gang infested, the predominant gang being the Tiny Raskal Gang (TRG), an Asian gang. She had seen

Louie and Ek with other TRG members. She had had a run-in with TRG about two months prior to the fire. She was sitting in her backyard when two gang members, who were running from the police, jumped her back fence and tried to come into the yard. She told them they were not allowed in the yard and had to leave. They got mad, and when her fiancé came out to support her, they threw a large potted plant at his head. They said they were going to get a gun and come back.

She called the police and filed a report. The individuals were Joseph Danh and Rachana Pheng. Right after that incident, someone came to their door and told them not to testify, and that things would be better for them if they did not. TRG members would often threaten them with sticks. The gang members often had guns. They sold drugs and harassed the neighbors. They called her "honky," "cop caller," and "dumb White bitch." McDonald said things got so bad that she and her family just stayed inside.

Just prior to the incident where defendants set fire to the apartment, McDonald had called the police because gang members were yelling and shooting guns. She could not relax in her own apartment because she was afraid a bullet would come through the window.

Two or three weeks after the fire, around January 15, 2007, McDonald called police to make an anonymous tip when she spotted Ek at the volleyball field. That day, Ek came to her back gate, pointed a gun at her, called her a "cop-calling bitch," and said she was going to get hers, just like the night of the fire.

Ek was arrested on February 14, 2007, and Louie was arrested on March 31, 2007. Louie admitted association with the TRG. Ek admitted association with MLS, the Moonlight Strangers. He had MLS tattooed on his left forearm.

Detective Richard Slater testified as an expert on Asian street gangs. Although both TRG and MLS are considered Asian street gangs, not all of their members are Asian. It is common for TRG members and MLS members to hang out together. They do crimes together and back up each other. In Stockton, both TRG and MLS are Blood gang subsets. Detective Slater opined that the arson of the apartment and subsequent threats were for the benefit of the TRG gang, specifically to punish McDonald and Eric Lamarra for calling the police on TRG gang members and to intimidate the entire neighborhood.

## DISCUSSION

### I–III*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV

### Sentencing

A. *Street Terrorism Enhancement*

Ek was convicted in count 3 of dissuading a witness on January 6, 2007, and the jury found true the enhancement allegation to that count that the offense was committed "for the benefit of, at the direction of, and in association with a criminal street gang, and with the specific intent to promote, further, and assist in criminal conduct by gang members."

Ek argues that the trial court erred when it imposed both a life sentence on count 3 and a stayed five-year enhancement on count 3. Respondent agrees, and so do we.

Subdivision (b) of section 186.22 provides in pertinent part: "Except as provided in paragraphs (4) and (5), any person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished as follows: [¶] . . . [¶] (4) Any person who is convicted of a felony enumerated in this paragraph committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall, upon conviction of that felony, be sentenced to an indeterminate term of life imprisonment with a minimum term of the indeterminate sentence calculated as the greater of: [¶] . . . [¶] (C) Imprisonment in the state prison for seven years, if the felony is extortion, as defined in Section 519; or threats to victims and witnesses, as defined in Section 136.1."

█ Both defendants were sentenced pursuant to section 186.22, subdivision (b)(4)(C). The court additionally imposed against Ek, then stayed, a five-year enhancement pursuant to section 186.22, subdivision (b)(1)(B).

*See footnote, *ante,* page 388.

"Penal Code section 186.22, subdivision (b) establishes *alternative* methods for punishing felons· whose crimes were committed for the benefit of a criminal street gang." (*People v. Lopez* (2005) 34 Cal.4th 1002, 1004 [22 Cal.Rptr.3d 869, 103 P.3d 270], italics added.) Because section 186.22, subdivision (b)(1) authorized imposition of an enhancement "[e]xcept as provided in paragraphs (4) and (5)," "the gang enhancement under section 186.22, subdivision (b)(1) may not be imposed when subdivision (b)(4) or (b)(5) applies instead." (*People v. Johnson* (2003) 109 Cal.App.4th 1230, 1237 [135 Cal.Rptr.2d 848].)

The section 186.22, subdivision (b)(1)(B) enhancement must be stricken.

### B. *Section 654: January 6, 2007, Street Terrorism Count*

Subdivision (a) of section 186.22 makes it a crime for any person to "actively participate[] in any criminal street gang with knowledge that its members engage in or have engaged in a pattern of criminal gang activity, and . . . [to] willfully promote[], further[], or assist[] in any felonious criminal conduct by members of that gang . . . ." Defendants argue their sentences on count 4 for violating section 186.22, subdivision (a), street terrorism, should have been stayed pursuant to section 654 and the double jeopardy clause of the Fifth Amendment to the United States Constitution. Count 4 was based on the events occurring on January 6, 2007. Ek received an eight-month consecutive sentence on count 4, and Louie received a two-year concurrent sentence on count 4.

The issue—whether a defendant can be punished both for street terrorism and another felony where the other felony is the "felonious criminal conduct" of the gang that is used to establish the charge of street terrorism—has not been consistently decided by the districts of the California Courts of Appeal that have dealt with the issue. It is currently before the Supreme Court in *People v. Mesa* (2010) 186 Cal.App.4th 773 [112 Cal.Rptr.3d 530], review granted October 27, 2010, S185688.

As is relevant, section 654, subdivision (a) provides: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." Thus, when a single act is charged, a defendant may be punished only once. (*Neal v. State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)

The challenge in applying section 654 arises because, "[f]ew if any crimes . . . are the result of a single physical act." (*Neal v. State of California,*

*supra,* 55 Cal.2d at p. 19.) Accordingly, courts have long recognized that the proscription against multiple punishment may also apply when a course of criminal conduct violates more than one statute. (*Ibid.*) Where a defendant's crimes are the result of a course of criminal conduct, courts endeavor to determine whether the course of conduct is divisible, i.e., whether it constitutes more than one criminal act. (*Ibid.*) A course of conduct will give rise to more than one criminal act if the actions were incident to more than one objective. (*Ibid.*) The point of determining whether a defendant had more than one criminal objective is to discover whether the defendant's multiple actions should be considered one criminal act or more than one criminal act for the purpose of section 654.

However, multiple objectives do not turn a single act into more than one criminal act. A single criminal act, even if committed incident to multiple objectives, may be punished only once. (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1345–1346 [69 Cal.Rptr.2d 728].)

Participation in a gang is punishable only if such participation is an act that is a felony. The act that subjects a person to conviction under section 186.22, subdivision (a) is the specific felony that is committed by gang members. (*People v. Castenada* (2000) 23 Cal.4th 743, 749 [97 Cal.Rptr.2d 906, 3 P.3d 278].) A person is not criminally liable for mere membership in the gang without also promoting, furthering, or assisting in a specific felony. (*Ibid.*) Membership in a gang is a status, not an act, and is not as such criminal.

Here, there were two criminal acts—setting fire to the apartment and verbally threatening McDonald. Assuming this constitutes a "course of conduct," defendants have already been punished for each act making up the course of conduct, and may not be punished again for either of these single acts. They were convicted of and punished for setting fire to the apartment in the arson count, and they were convicted of and punished for the verbal threat in the dissuading a witness count.[5] Defendants cannot be punished again for either of these individual actions. The punishment for the January 6, 2007, street terrorism counts should have been stayed.[6]

---

[5] Ek received an eight-year term for arson and seven years to life for dissuading a witness. He received a stayed sentence for the criminal threat count. Louie received a five-year sentence for arson, and seven years to life for dissuading a witness.

[6] The majority, in the concurring opinion, on the section 654 issue, concludes that section 654 prevents defendants from being punished for count 4, the substantive gang offense (§ 186.22, subd. (a)), because their sentences in count 3, dissuading a witness, were enhanced with the street terrorism enhancement (§ 186.22, subd. (b)(4)(C)). While I agree that section 654 prevents defendants from being punished for both the gang enhancement and the substantive gang offense where both are based on the same act, the more fundamental flaw in imposing a sentence for the substantive gang offense is that it violates section 654's prohibition against multiple punishment for a single act. This is because in determining whether section 654

C. *Section 654: Arson, Dissuading a Witness*

Ek argues that the arson, witness intimidation, and criminal threat that the jury found occurred on January 6, 2007, comprised a course of conduct with the single objective of punishing McDonald for being a "cop caller." As such, he argues the punishment for arson should have been stayed pursuant to section 654. We disagree.

There was sufficient evidence to support a finding by the trial court that defendants harbored multiple independent objectives when they threatened McDonald, then set her apartment on fire. (See *People v. Herrera* (1999) 70 Cal.App.4th 1456, 1466 [83 Cal.Rptr.2d 307] ["The question of whether the defendant held multiple criminal objectives is one of fact for the trial court, and, if supported by any substantial evidence, its finding will be upheld on appeal."].)

Detective Slater testified that one of defendants' criminal objectives was to make sure the entire neighborhood knew what would happen to anyone who reported the criminal activities of the gang. The jury was instructed that to find defendants guilty of arson, it must find that defendants acted on purpose to burn the apartment. The fact that the jury convicted defendants of arson indicates it found beyond a reasonable doubt that one of defendants' purposes was to burn the apartment. There was also sufficient evidence based on the verbal threat given to McDonald, that one of the criminal objectives was to

applies to the punishment for the substantive gang offense, the question is whether the defendant already has been punished for a single criminal act, not whether the gang aspect of a defendant's action already had been punished.

The Supreme Court recently explained that section 654 applies differently to enhancements than to substantive crimes. (*People v. Ahmed* (2011) 53 Cal.4th 156, 163 [133 Cal.Rptr.3d 856, 264 P.3d 822].) "Provisions describing substantive crimes, such as the assault with a firearm of this case, generally define criminal *acts*. But enhancement provisions do not define criminal acts; rather, they increase the punishment for those acts. They focus on *aspects* of the criminal act that are not always present and that warrant additional punishment." (*Ibid.*) As applied to multiple enhancements, "section 654 bars multiple punishment for the same *aspect* of a criminal act." (*Id.* at p. 164.)

It follows that if section 654 applies differently to enhancements than to substantive crimes, and if the application focuses on *aspects* of the crime where enhancements are concerned, then the application focuses on the criminal *acts* where substantive crimes are concerned.

Defendants were appropriately punished for the street terrorism *enhancement* to the crime of dissuading a witness because of the gang *aspect* of that crime. However, the substantive crime of street terrorism described in section 186.22, subdivision (a) defines a criminal *act*, specifically, promoting, furthering, or assisting in a felony. In determining whether section 654 prohibits the court from imposing a sentence for the violation of this substantive crime, I would look to the criminal act committed to determine whether that act has been separately punished. I would not look to the *aspect* of the crime, which is an issue only where there are multiple enhancements.

prevent McDonald from reporting the crime to the authorities. Defendants themselves argue their purpose was to punish McDonald for reporting past crimes.

■ Moreover, where a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective. (*People v. Beamon* (1973) 8 Cal.3d 625, 639, fn. 11 [105 Cal.Rptr. 681, 504 P.2d 905].) If the separation in time afforded defendants an opportunity to reflect and to renew their intent before committing the next crime, a new and separate crime is committed. (*In re William S.* (1989) 208 Cal.App.3d 313, 317 [256 Cal.Rptr. 64].) The evidence indicated that there was a pause of about 15 minutes between the verbal threat to McDonald and the fire. McDonald did not mention seeing a bucket or smelling gasoline, thus, as Ek recognizes, the "only reasonable conclusion is that, after McDonald closed her door, [Ek] set about provisioning himself with a bucket filled with gasoline and then returned to McDonald's apartment to pour the gasoline on the door and window and ignite it." This gave defendants the time to reconsider and reflect upon their actions, and to renew their intent before burning McDonald's apartment.

Because defendants' course of conduct consisting of two criminal acts was incident to several objectives and was separated in time by an interval sufficient to allow them to reflect and renew their intent, the court properly sentenced defendants for the crimes of arson and dissuading a witness.

D. *Section 654: Criminal Threats, Dissuading a Witness*

Ek was convicted in counts 6 and 7 of making criminal threats and dissuading a witness based upon the January 15, 2007, incident. He received a seven-year-to-life sentence for the conviction for dissuading a witness, and a consecutive eight months for the criminal threat conviction. He argues that these two convictions arose from a single criminal act for which he can be punished only once. Respondent agrees, and so do we.

This was a single criminal act and, as previously stated, a single criminal act may result in only one punishment, even if the defendant harbored multiple objectives. The threat was merely the method employed to attain the objective of dissuading the witness. (*People v. Mendoza, supra,* 59 Cal.App.4th at p. 1346.) Accordingly, the sentence for count 6, making criminal threats, should be stayed.

## DISPOSITION

As to defendant Louie, the trial court is directed to modify the judgment to stay the concurrent two-year sentence for street terrorism and amend the abstract of judgment accordingly.

As to defendant Ek, the trial court is directed to modify the judgment to stay the eight-month sentence for street terrorism and the eight-month sentence for criminal threats, to strike the five-year stayed enhancement to count 3, and to amend the abstract of judgment accordingly. The trial court shall forward to the Department of Corrections and Rehabilitation amended abstracts of judgment for each defendant.

In all other respects the judgments are affirmed.

**NICHOLSON, J.,** Concurring.—I concur in the opinion, except as to part IVB. As to that part, I concur in the result, but my reasoning differs. In my opinion, Penal Code section 654 prohibits punishment for the substantive street terrorism counts (Pen. Code, § 186.22, subd. (a)) because defendants were already punished for the same gang aspect of the crimes when their sentences were enhanced for committing the crimes for the benefit of a gang (Pen. Code, § 186.22, subd. (b)(4)(C)).[1]

Both defendants were punished for the gang enhancement associated with the dissuading a witness crime committed on January 6, 2007, as alleged in count 3 of the information. The gang enhancement turned a determinate term into an indeterminate life term for that crime. (§ 186.22, subd. (b)(4)(C).) (The gang enhancement associated with the arson count was stayed pursuant to § 654.) In addition to that, both defendants were punished for the substantive street terrorism count also committed on January 6, 2007, as alleged in count 4.

Punishment for the gang enhancement and the substantive street terrorism count for the same aspect of the criminal activity violates section 654.[2] "The purpose of [section 654's] protection against punishment for more than one violation arising out of an 'act or omission' is to insure that a defendant's punishment will be commensurate with his culpability. (See *Neal v. State of California* [(1960)] 55 Cal.2d [11,] 20 [9 Cal.Rptr. 607, 357 P.2d 839].) 'Because of the many differing circumstances wherein criminal conduct involving multiple violations may be deemed to arise out of an "act or omission," there can be no universal construction which directs the proper application of section 654 in every instance.' [Citations.]" (*People v. Perez* (1979) 23 Cal.3d 545, 550–551 [153 Cal.Rptr. 40, 591 P.2d 63].)

---

[1] Further references to an unidentified section are to the Penal Code.

[2] Consistent with the Supreme Court's recent decision in *People v. Ahmed* (2011) 53 Cal.4th 156 [133 Cal.Rptr.3d 856, 264 P.3d 822], we refer to the gang activity as an "aspect" of the criminal conduct.

I believe, therefore, that the determination of whether a defendant can be punished for two crimes or, on the other hand, must be punished for only one of them rests on the simple question of whether punishing the defendant for just one of those crimes "insure[s] that [the] defendant's punishment will be commensurate with his culpability." (*People v. Perez, supra,* 23 Cal.3d at p. 551; see also *People v. Nunes* (2011) 200 Cal.App.4th 587, 608–609 [132 Cal.Rptr.3d 764] (conc. opn. of Nicholson, J.).)

Punishment for dissuading a witness, enhanced considerably to an indeterminate life term because of the gang enhancement, provides punishment commensurate with defendants' culpability, including the gang aspect of that culpability. Adding to that term additional punishment for the substantive street terrorism counts goes beyond defendants' culpability because the street terrorism counts were based on the same gang activity used to enhance the punishment for dissuading a witness.

This is a problem that was overlooked in *People v. Herrera* (1999) 70 Cal.App.4th 1456 [83 Cal.Rptr.2d 307] (*Herrera*), in which, like this case, the defendant was punished separately for both the gang enhancement and the street terrorism count. In *Herrera,* the trial court sentenced the defendant on one of the attempted murder counts to a life term plus an additional determinate term for a gang enhancement (§ 186.22, subd. (b)(1)). The court also sentenced the defendant to a concurrent term for a violation of the substantive street terrorism crime (§ 186.22, subd. (a)). (*Herrera, supra,* at p. 1462.) On appeal, the *Herrera* court struck the determinate gang enhancement because it was not authorized for an indeterminate term. However, it directed the trial court to modify the abstract of judgment "to reflect that he cannot be considered for parole for a minimum of fifteen years under section 186.22, subdivision (b)(4)," as punishment for the gang enhancement. (*Id.* at p. 1465.) Then, without recognizing that the defendant had already been punished for the gang aspect of the crime when the minimum term was applied to the punishment for attempted murder pursuant to section 186.22, subdivision (b)(4), the court additionally allowed the term for the street terrorism count to stand unstayed because the attempted murder and the substantive street terrorism count involved separate intents and objectives.

Therefore, I would not follow *Herrera* here because it did not consider the double punishment problem that I believe is critical to the section 654 determination both in that case and here. On the facts of this case, involving punishment for both a gang enhancement and a street terrorism count, as to

each defendant, based on the same aspect of the criminal activity, I agree that we must modify the sentence with a section 654 stay on the substantive street terrorism counts.

Hoch, J., concurred.

The petitions of all appellants for review by the Supreme Court were denied May 9, 2012, S200371.