Filed 9/3/15  P. v. Montes CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JESSE JAMES MONTES,<br><br>    Defendant and Appellant. | B256771<br><br>(Los Angeles County<br>Super. Ct. No. VA130397) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Raul A. Sahagun, Judge.  Affirmed, as modified.

Orly Degani, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General and Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Ryan M. Smith, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Jesse James Montes was convicted of one count of attempting to dissuade a witness by force or threat in violation of Penal Code section 136.1, subdivision (c)(1), and a gang enhancement under Penal Code section 186.22, subdivision (b) was found to be true.[1]  Defendant contends there was insufficient evidence that the offense was committed by force or threat of force, or that any offense was committed for the benefit of a gang.  We disagree.  We do, however, correct two minor errors in connection with defendant's sentencing.

**PROCEDURAL BACKGROUND**

The operative pleading is the second amended information.  Defendant was charged with one count of attempting to dissuade a witness by force or threat.  A gang enhancement was alleged under section 186.22, subdivision (b)(1)(B).  This allegation, if found true, would enhance defendant's sentence by five years.  However, the gang enhancement was also alleged under section 186.22, subdivision (b)(4).  That provision provides, as an alternative to the five-year enhancement under subdivision (b)(1)(B), for the defendant to be sentenced to an indeterminate term of seven years to life, when the underlying felony is dissuading a witness.  (§ 186.22, subd. (b)(4)(C).)  Finally, it was also alleged that defendant had suffered a prior serious felony conviction within the meaning of section 667, subdivision (a), which also constituted a strike within the meaning of section 1170.12, and two prior prison terms (§ 667.5, subd. (b)).

Defendant pleaded not guilty and denied the enhancement allegations.  The case proceeded to a jury trial.  The jury found defendant guilty of attempting to dissuade a witness by force or threat, and found the gang enhancement allegation to be true.  Defendant waived jury trial on the prior conviction allegations, which had been bifurcated.  The trial court found the prior serious felony and strike allegations to be true; the prosecution apparently declined to proceed on the prior prison term allegations.

---

[1]     All further section references are to the Penal Code.

2

Defendant was sentenced as follows:  an indeterminate term of 7 years to life, pursuant to section 186.22, subdivision (b)(4)(C), doubled to 14 years to life (due to the strike), plus 5 years (due to the prior serious felony conviction), for a total sentence of 19 years to life in prison.  Defendant filed a timely notice of appeal.

**FACTS**

Defendant is a member of the Varrio Norwalk gang.  His friend, Anthony Zamora, is also a member.  In March 2013, Zamora had robbed A.F. by putting a knife to her throat while she was working alone in her father's store.  The store is located in territory claimed by the Varrio Norwalk gang.  In April 2013, A.F. testified at Zamora's preliminary hearing.

On May 25, 2013, defendant tried to convince A.F. not to testify further against Zamora.  A.F. knew that defendant was coming; defendant's girlfriend had warned her to be careful because defendant was going to talk to her about Zamora's case.  Defendant's girlfriend told A.F. that she guessed Zamora "told [defendant] to go and talk to you and tell you not to go to court."  Over the course of the week leading up to May 25, A.F.'s father saw defendant in his shop five times, but defendant left without buying anything.  On the morning of May 25, A.F.'s father saw defendant in the shop.  He asked defendant if he needed anything; defendant left without answering.

That afternoon, around 5:00 p.m., defendant finally got A.F. alone.  It was closing time, and A.F. was in front of the shop, clearing off a round outdoor table filled with merchandise.  Defendant was in the parking lot, and yelled, "Can I talk to you?"  A.F. looked up.  Defendant said, "Yeah, let me talk to you," and walked up to A.F. without waiting for an answer.  Defendant was shirtless, displaying Varrio Norwalk tattoos on his chest, abdomen, and back.  Defendant approached A.F. and stood with his face approximately five inches away from hers.  A.F. backed up, but was cornered with the glass window to the shop behind her and the table to one side, leaving her with no escape.

Defendant said, "I'm here to talk to you about my friend.  Like I am guessing you already know who my friend was."  A.F. did not reply; she was frightened.  Defendant

3

spoke in no more than a whisper. He told A.F. that his friend's mother had cancer and needed her son at home. He said the mother was willing to pay back all the money he had taken if A.F. would decline to go to court and testify further against him.

A.F. responded that it was not about the money. She told defendant that she was no longer comfortable at the store and could not be there alone. She always had to have someone with her because she was afraid of it happening again. She told defendant that she was going to continue going to court and make Zamora pay for what he had done.

Rather than respecting A.F.'s decision and walking away, defendant changed his approach. He became angry with the woman who had just admitted to him that she was in an emotionally fragile state. At this point, A.F.'s father, who had been in the back of the store, saw defendant standing very close to his daughter and came out front to see what was going on. A.F. gestured to her father to stay and listen. Defendant turned his back to A.F.'s father and continued whispering to A.F.

Defendant said, "Just remember, I am not here to threaten you. But I can't control what other people do." Defendant repeated, "I'm not here to threaten you" several times. He also said, "I'm not a bad person," and that he "didn't want to hurt" A.F. A.F. felt threatened and scared. She was afraid because she knew defendant was a member of Varrio Norwalk. After a few minutes, defendant turned and walked away. A.F. immediately reported the threat to the investigating officer for the Zamora robbery.[2]

---

[2] Defendant's witnesses at trial consisted solely of his friend, a twice-convicted felon, who testified that, at some point during the week of May 25, 2013, he witnessed defendant take a call on his cellphone and put it on speaker. The caller, a woman, told defendant that her son, Anthony, got in trouble again and asked defendant to " 'find out what Anthony did and see if we can correct it . . . in a way to pay any damages that he may have done.' " Why Zamora's mother purportedly needed defendant to "find out what" Zamora had done one month *after* his preliminary hearing was never explained.

**DISCUSSION**

*1.      Standard of Review*

" ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt.  [Citations.]  On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.  [Citation.]"  [Citation.]' "  (*People v. Virgo* (2013) 222 Cal.App.4th 788, 797.)

" 'Although it is the duty of the jury to acquit a defendant if it finds that circumstantial evidence is susceptible of two interpretations, one of which suggests guilt and the other innocence [citations], it is the jury, not the appellate court which must be convinced of the defendant's guilt beyond a reasonable doubt.  " 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also be reasonably reconciled with a contrary finding does not warrant a reversal of the judgment.' "  [Citations.]' "  (*People v. Figueroa* (1992) 2 Cal.App.4th 1584, 1587.)

*2.      There is Sufficient Evidence of an Implied Threat of Force*

Section 136.1 declares it to be a wobbler for any person to "[k]nowingly and maliciously attempt to dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."  (§ 136.1, subd. (a)(2).)  When the act is "accompanied by force or by an express or implied threat of force or violence," it becomes a felony.  (§ 136.1, subd. (c)(1).)

Defendant does not dispute that he attempted to dissuade A.F. from giving further testimony against Zamora, but suggests that the evidence is insufficient to show that he did so with an express or implied threat of force or violence.  The contention is easily refuted.  A.F.'s father overheard defendant say that he "didn't want to hurt" A.F. — a statement pregnant with the implication that he would hurt her if he had to.  In

5

determining whether there was an implied threat of force, we consider not just the plain meaning of the words spoken, but the "inherent baggage of connotation." (*People v. Mendoza* (1997) 59 Cal.App.4th 1333, 1344.) Moreover, we consider the circumstances in which a statement is made, not just the statement itself, to determine whether a statement constitutes an attempt to dissuade a witness by force. (*Ibid.*) Here, defendant waited to talk to A.F. alone, cornered her so she could not get away, stood very close to her with his gang tattoos exposed, and whispered, "Just remember, I am not here to threaten you. But I can't control what other people do." Based on these facts, the jury was well within its rights to conclude that defendant was making a not-very-veiled threat that, among other things, other Varrio Norwalk gang members would hurt A.F. if she did not comply.[3]

3.     *There is Sufficient Evidence Defendant Committed the Crime to Benefit Varrio Norwalk*

Defendant next contests the sufficiency of the evidence supporting the gang enhancement. Section 186.22, subdivisions (b)(1) and (b)(4) provide that any "person who is convicted of a felony committed for the benefit of, at the direction of, or in association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members, shall" receive an enhanced punishment.

---

[3]     Defendant attaches much weight to A.F.'s testimony on cross-examination that she understood defendant to mean, "[t]hat maybe he wasn't there to threaten me, but other people would do something." Defendant argues that, by this, A.F. admitted that defendant was not, in fact, threatening her. A.F.'s testimony was not nearly so exonerating. First, A.F. did not make an unequivocal statement that defendant was not threatening her; she stated only that *maybe* he was not there to threaten her. Second, defendant ignores the second part of A.F.'s interpretation of defendant's words; that defendant was telling her that "other people would do something." While defendant argues that his language, "I can't control what other people do," was simply a true statement that he could not control others' behavior, A.F. quite reasonably interpreted defendant's statement as a threat that other people "would do something" to her. Indeed, she testified on direct-examination that she felt "[t]hreatened" and "[s]cared" by this statement. The jury was, of course, free to believe that the words and circumstances of defendant's encounter with A.F. themselves constituted a threat of violence by defendant.

To establish the gang enhancement, the prosecution must establish: (1) the existence of a criminal street gang; (2) the crime was committed "for the benefit of, at the direction of, or in association with" the gang; and (3) the crime was committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." Defendant does not contest the evidence of the first or third elements; he challenges only the sufficiency of the evidence that he threatened A.F. for the benefit of Varrio Norwalk.[4]

Defendant argues there is no evidence that he attempted to dissuade A.F. from testifying in order to benefit Varrio Norwalk, rather than to simply benefit his friend Zamora personally. We disagree. As discussed above, defendant exposed his gang tattoos and conveyed a threat to A.F. from "other people"—which reasonably could be interpreted as defendant conveying to A.F. a threat *from* Varrio Norwalk itself. Moreover, a gang expert testified that it is common for Varrio Norwalk members to commit crimes in their own territory because it is easier to get away with those crimes when they know the people in that area are afraid to report them. Thus, if defendant had been successful in dissuading A.F. from testifying, it would have benefitted Varrio Norwalk by furthering community fear of the gang and making it easier for the gang to commit more offenses.

Defendant relies heavily on *People v. Ramon* (2009) 175 Cal.App.4th 843, a case in which a gang enhancement was reversed for insufficient evidence. There, the defendant and a fellow gang member were arrested while driving a stolen vehicle containing an unregistered firearm within their gang's territory. (*Id*. at pp. 846-847.) The only evidence that the crime had been committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members," the third element (not at issue here) was the gang expert's speculation that a stolen vehicle and unregistered gun could be used by the gang to commit further offenses. (*Id*. at pp. 847-849.) This was insufficient. (*Id*. at p. 851.) *Ramon* is distinguishable. Here, the gang expert did not

---

**4** The concession is appropriate. Defendant's intent in attempting to dissuade A.F. was to put an end to Zamora's prosecution. In other words, his specific intent was to assist Zamora, a fellow gang member, in getting away with robbery.

speculate as to any further criminal activity that might be committed (he did not, for example, testify that if Zamora were freed, he could commit further offenses for the benefit of the gang). Instead, he testified that defendant's act of witness intimidation *itself* was designed to benefit the gang by furthering community fear of, and reluctance to testify against, Varrio Norwalk members.

*4.      Sentencing Issues*

Defendant contends, the prosecution concedes, and we agree, that a defendant sentenced to an indeterminate term under section 186.22, subdivision (b)(4) cannot also receive the five-year enhancement under section 186.22, subdivision (b)(1)(B). (*People v. Louie* (2012) 203 Cal.App.4th 388, 396.) In this case, when the trial court imposed the indeterminate term, it stated that the court "stays any punishment" with respect to section 186.22, subdivision (b)(1)(B). No such stayed term appears in the minute order of the sentencing hearing or the abstract of judgment. Nonetheless, to the extent the reporter's transcript indicates the term was imposed and stayed, it should be stricken from the reporter's transcript.

Our review of the record has, however, revealed an error in the abstract of judgment. The abstract has a place where sentence enhancements are to be listed; it properly reflects a 5-year enhancement for the prior serious felony (§ 667, subd. (a)(1)). Thereafter, in section 6 of the abstract, the indeterminate term of 19 years to life is listed. But section 6 also has, preprinted after the space for the indeterminate term, the language "PLUS enhancement time shown above." In other words, the abstract indicates an indeterminate term of 19 years to life *plus* the 5-year enhancement. This is erroneous. Defendant was sentenced to 19 years to life inclusive of the 5-year enhancement. The abstract should be modified to reflect a *14*-years-to-life indeterminate term plus the 5-year enhancement. This results in the 19-years-to-life sentence actually imposed.

## DISPOSITION

The superior court is directed to modify the abstract of judgment to reflect, under section 6c, a sentence of 14 years to life (plus enhancements listed above) on count 1, rather than a sentence of 19 years to life (plus enhancements listed above). The stayed sentence on Penal Code section 186.22, subdivision (b)(1)(B) shall be stricken from the reporter's transcript. As modified, the judgment is affirmed.

RUBIN, J.

WE CONCUR:

BIGELOW, P. J.

FLIER, J.

9