Filed 5/2/22  P. v. Esquibel CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ENRIQUE ESQUIBEL,<br><br>    Defendant and Appellant. | F081301<br><br>(Super. Ct. No. BF166694A)<br><br><br>**OPINION** |

-ooOoo-

### THE COURT\*

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth Twisselman II, Judge.

Diane E. Berley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*    Before Franson, Acting P. J., Peña, J. and Snauffer, J.

Enrique Esquibel appeals from a resentencing hearing at which the trial court struck the prison priors, declined to strike the firearm enhancements, and adopted all other findings and orders from the original sentencing hearing. One of those findings was that counts 1 and 5 were not committed pursuant to one intent and objective, and thus consecutive sentences were appropriate. Esquibel now contends that the trial court abused its discretion by not reconsidering its prior findings as to counts 1 and 5 in light of *People v. Roles* (2020) 44 Cal.App.5th 935 (*Roles*). We agree with respondent that *Roles* is materially distinguishable, and the trial court properly declined to stay sentence on count 5.

**STATEMENT OF THE CASE**

Esquibel was convicted by jury in count 1, of kidnapping during the commission of a carjacking (Pen. Code, § 209.5)[1]; in count 2, of carjacking (§ 215, subd. (a))[2]; in count 3, of kidnapping (§ 207, subd. (a)); in count 4, of assault with a firearm (§ 245, subd. (b)); in count 5, of making criminal threats (§ 422); and in count 6, of being a felon in possession of a firearm (§ 29800, subd. (a)(1)). The jury found true gang allegations as to counts 2, 4, 5, and 6 (§ 186.22, subd. (b)(1))[3], and firearm use enhancements as to counts 1 through 5 (§ 12022.53, subds. (a), (b)). The trial court found true one prior strike conviction (§§ 667, subds. (c)-(j), 1170.12, subds. (a)-(e)), and two prior prison terms (§ 667.5, subd. (b)).

The trial court sentenced Esquibel to an indeterminate term of life, plus a determinate term of 26 years, as follows: on count 1, to life with the possibility of parole, plus 10 years for the section 12022.53, subdivision (b) enhancement, plus two years for

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

[2] The trial court found count 2 to be a necessarily included offense to count 1 and dismissed count 2 in the interests of justice.

[3] The jury hung on criminal street gang allegations as to counts 1 and 3. The trial court declared a mistrial and dismissed those allegations.

two section 667.5, subdivision (b) prison priors; and on count 5, the upper term of three years, plus five years for the gang enhancement, plus four years for the section 12022.5, subdivision (a), firearm enhancement, plus two years for two section 667.5, subdivision (b) prison priors, to run consecutive to the sentence imposed in count 1. The sentences in counts 3, 4 and 6 were imposed and stayed pursuant to section 654.

On appeal, this court affirmed the judgment but remanded for resentencing in light of Senate Bill No 620, which amended section 12022.53, subdivision (h) to give the court discretion to strike previously mandatory firearm enhancements. (*People v. Esquibel* (Dec. 17, 2019, F076330) [nonpub. opn.].)

On remand, the trial court declined to exercise its discretion to strike the firearm enhancements, but reduced the sentence by four years by striking the prior prison term enhancement in light of Senate Bill No. 136.

## STATEMENT OF THE FACTS[4]

In early December of 2016, J.R. met Esquibel on a social media Web site and a romantic relationship ensued. Esquibel told J.R. he was a former member of the West Side Bakers street gang and he had numerous gang tattoos. On December 23, J.R.'s home was burglarized, and "everything" was missing, including a bonus check she received, her cell phone and her vehicle. J.R. suspected Esquibel and his brother of the burglary and contacted law enforcement.

Soon after the burglary, Esquibel's brother contacted J.R. and offered to return some of the stolen items, including the bonus check, if she paid him $60, and she agreed. On December 26, 2016, J.R.'s cousin contacted Esquibel and made arrangements for her to get her vehicle back. Esquibel subsequently met J.R. at a store and returned her

---

[4]     The underlying facts are not in dispute and are taken from this court's opinion in case No. F076330, of which we take judicial notice.

vehicle. They agreed to meet the following morning for Esquibel to return some additional possessions.

On December 27, 2016, Esquibel accused J.R. of having a romantic relationship with his brother and threatened to shoot her and beat her. His threatening language included specific reference to his gang.

Later that day, J.R. drove to the motel where Esquibel was staying in order for him to return her stolen belongings. At the motel, Esquibel told J.R. that he needed her car and tried to force her out of the driver's seat when she refused. Esquibel took the keys out of the ignition and opened the driver's side door. He then pulled a gun out of his ankle area, pointed it at J.R. and said, "How much is your life worth to you?" At that moment, a police car arrived at the scene on an unrelated call. Esquibel threw the gun into the backseat of the car, ran to the passenger side, got in, and told J.R. to drive.

J.R. drove past the police car very slowly, trying to make eye contact, and repeatedly stepping on her brakes. Esquibel retrieved the gun from the backseat and told J.R. to drive. When J.R. reached the parking lot exit and realized the police car was not pursuing her, she put the car into reverse and honked the horn. Esquibel opened the passenger door, told J.R. he was going to get her, and ran away. J.R. told the officer that Esquibel had a gun; they pursued and caught him.

Following Esquibel's arrest, J.R. received a death threat from Esquibel's brother. She received messages from friends of Esquibel's, offering her money not to testify and to drop charges. She also received messages from Esquibel's family members stating that they knew where she lived. J.R. feared for her life and moved.

**DISCUSSION**

Esquibel contends that, under the holding of *Roles*, "the trial court was compelled to consider whether Counts 1 [kidnapping during the commission of a carjacking] and 5 [making criminal threats] occurred pursuant to one intent and objective." We find no error.

4.

Section 654 "precludes multiple punishments for a single act or indivisible course of conduct." (*People v. Hester* (2000) 22 Cal.4th 290, 294.) " 'Where a defendant's crimes are the result of a course of criminal conduct, courts endeavor to determine whether the course of conduct is divisible, i.e., whether it constitutes more than one criminal act. [Citation.] A course of conduct will give rise to more than one criminal act if the actions were incident to more than one objective.' [Citation.]" (*Roles, supra,* 44 Cal.App.5th at p. 946, quoting *People v. Louie* (2012) 203 Cal.App.4th 388, 396–397.)

At the original sentencing hearing, Esquibel's counsel argued that the sentence on count 5 should be stayed under section 654 because counts 1 and 5 comprised a continuous course of conduct with the same intent and objective. The trial court disagreed, finding that the threat Esquibel made as he got out of the car—"that he would get her later" —was "separate and distinct from the carjacking." Esquibel did not challenge this finding in his original appeal.

On remand, Esquibel's counsel did not re-raise the section 654 issue after the trial court indicated its intent to adopt all of the same findings from the original sentencing hearing. The trial court again imposed sentence on count 5 to run consecutive to count 1.

Esquibel now contends that the trial court should have reconsidered its finding under section 654 in light of *Roles*, which was decided after the original sentencing hearing but before resentencing. We find *Roles* inapplicable.

In *Roles*, the defendant and wife were involved in a family law matter, concerning divorce, child custody, and a domestic violence restraining order. The wife and minor child were each represented by separate counsel. (*Roles, supra,* 44 Cal.App.5th at p. 939.) The defendant left a series of threatening telephone messages with minor's counsel and, based on the 28 voicemail messages he left, was convicted of stalking. (*Id.* at pp. 939-940.) Defendant was also convicted of making criminal threats, based on 15 of the 28 messages made. (*Id.* at p. 945.)

The court in *Roles* found that section 654 applied to prohibit separate punishments for the stalking and criminal convictions, as the "acts that constituted making a criminal threat (i.e., the 15 threatening messages) cannot be separated from defendant's course of conduct in stalking.… Both crimes were based on the same phone calls and voice messages." (*Roles, supra,* 44 Cal.App.5th at pp. 947-948.)

*Roles* is materially distinguishable from the facts here, as the conduct that supported the two convictions—kidnapping during the commission of a carjacking and criminal threats—did not comprise a single indivisible criminal act. Esquibel argues that the act of taking over J.R.'s car while using a gun was indistinguishable from the threat, "How much is your life worth?" However, the trial court specifically found that the criminal threat conviction was based on a statement Esquibel made to J.R. "that he would get her later" right after he got out of the car with the gun and right before he ran from police. At the time he made the threat, the kidnapping during the commission of the carjacking was already complete. Again, as stated in *Roles*, " 'A course of conduct will give rise to more than one criminal act if the actions were incident to more than one objective' " and " '[w]here a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective.' " (*Roles, supra,* 44 Cal.App.5th at p. 946, quoting *People v. Louie, supra,* 203 Cal.App.4th 396-397, 399.) Here, the conduct was temporarily separate and incident to more than one objective and section 654 was therefore inapplicable.

The trial court properly declined to stay sentence on count 5, and reconsideration in light of *Roles* was unnecessary.

## DISPOSITION

The judgment is affirmed.