Filed 5/23/23 P. v. Edwards CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E077753 |
| v. | (Super. Ct. No. INF2000487) |
| BRIAN ANTHONY EDWARDS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Charles J. Koosed and Stephen J. Gallon, Judges. Affirmed in part with directions.

Christine Vento, appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland , Assistant Attorney General, Steve Oetting and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

A jury convicted defendant and appellant Brian Anthony Edwards of five counts after he severely beat and tortured his wife. The trial court sentenced him to a term of nine years and eight months in prison.

Defendant contends the trial court erroneously refused to stay the sentences on two counts under Penal Code section 654[1] and that the matter must be remanded for resentencing under recently enacted legislation. The People agree, as do we, that a remand is appropriate, but we reject defendant's remaining argument. We therefore affirm the judgment of conviction, vacate defendant's sentence in part, and remand for resentencing.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Law enforcement was dispatched to defendant's apartment, where he lived with his wife, Jane Doe, and their daughters, then ages four and four months. When Doe answered the door, the officers noticed she had injuries on her face and had trouble walking.[2]

---

[1] All further statutory references are to the Penal Code.

[2] The facts below are drawn from Doe's recorded interview with the officers, which was played for the jury. Doe recanted her statements to the officers at trial and said she had lied to the officers.

Doe told the officers that defendant had seriously abused her the day before. Doe explained that defendant left the apartment after they got into a fight. While he was gone, Doe messaged her sister and told her about the argument.

About 30 minutes later, defendant returned and demanded to see Doe's cellphone. He looked at the messages she had sent her sister and grew angry. He then asked Doe about messages she had sent a man and said he was "going to make her talk."

Defendant started punching Doe in the face with both fists. She tried to block his punches by curling into a fetal position and covering her head and face, but she started bleeding on her face. Defendant again said he was "going to make her talk," grabbed an HDMI cord, and whipped Doe with it about 10 to 15 times.

Doe ran to the front door while yelling for help, but defendant grabbed her by the mouth and dragged her back into the apartment. Defendant threatened to kill their daughters if Doe tried to leave again. Because she feared for the children's safety, she stayed in the apartment and did not try leaving again.

Defendant kept hitting Doe with the HDMI cord, but then grabbed an aluminum baseball bat and began taunting Doe and laughing. He asked if she wanted "to play games" and started hitting her with the bat, including on her leg, arm, and the right side of her head. Doe began falling in and out of consciousness, became dizzy, and had blurry vision and ringing in her ears.

Defendant kept hitting Doe with the bat, the HDMI cord, and his fists. Defendant told Doe that she needed to stay alive so she could feel pain, so he dragged her into the

3

shower, turned the cold water on and aimed it at her face, and told her that the cold water would keep her alive so she could suffer. Doe lay in the shower with the cold water running on her for three hours, when she regained the strength to get out of the shower.

Doe immediately went to check on her daughters. Defendant said she looked "terrible," handed her a frozen fish to ice her injuries, and left for work. Doe called her mother and step-father and told them what happened. Doe's mother called the police.

Defendant's abuse caused Doe to suffer a fractured nose, lacerations on her eye, swelling on her face, welts on her arm, and severe bruising on her left leg.

A jury convicted defendant of torture (§ 206; count 1), assault with a deadly weapon (§ 245, subd. (a)(1); count 2), inflicting corporal injury on a spouse (§ 273.5, subd. (f)(2); count 3), false imprisonment (§ 236; count 4), and making criminal threats (§ 422; count 5). The trial court sentenced him to a term of seven years to life for count 1, a consecutive term of eight months for count 4, and a consecutive term of two years for count 5. The court stayed the sentences on counts 2 and 3 under section 654, but denied defendant's request under section 654 to stay the sentence on the false imprisonment and criminal threats counts (counts 4 & 5).

IV.

DISCUSSION

Defendant argues the trial court erroneously denied his section 654 request to stay the sentence on the false imprisonment and criminal threats counts (counts 4 & 5) because he had the same objective in committing all five offenses as one continuous act

4

of torture, so the court should have stayed the sentences for counts 2 through 5 rather than staying only the sentences on counts 2 and 3. We disagree. We agree with the parties, however, that this case must be remanded for resentencing.

A. *Section 654*

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.) "'''Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may [not] be punished . . . for more than one.''" [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

We review a trial court's ruling under section 654 for substantial evidence. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

Section 206 defines torture as follows: "Every person who, with the intent to cause cruel or extreme pain and suffering for the purpose of revenge, extortion, persuasion, or for any sadistic purpose, inflicts great bodily injury as defined in [s]ection 12022.7 upon the person of another, is guilty of torture." Section 236 defines false imprisonment as "the unlawful violation of the personal liberty of another" and is a felony if carried out by violence. Section 422 provides that "Any person who willfully threatens to commit a crime which will result in death or great bodily injury to another person, with the specific intent that the statement made verbally . . . is to be taken as a threat . . . and thereby causes that person reasonably to be in sustained fear for his or her safety or for his or her immediate family's safety" is guilty of making a criminal threat.

Substantial evidence supports the trial court's finding that defendant acted with separate objectives when he tortured, falsely imprisoned, and threatened Doe. Defendant falsely imprisoned Doe when he grabbed her by the mouth and pulled her back into the apartment when she tried to flee. The trial court could reasonably find that defendant's intent and objective was to physically stop Doe from leaving the apartment. Defendant threatened Doe when he threatened to kill their children if she tried to leave the apartment. The trial court could reasonably find that defendant's intent and objective was to instill fear in Doe for her children's safety so that she would not try to leave the

6

apartment. Defendant tortured Doe by hitting her repeatedly with the bat and HDMI cord then dragging her into the shower and leaving her under the cold running water for three hours. The trial court could reasonably find that defendant's intent and objective was to exact revenge on her and to "make her talk" about the messages between her and another man.

In short, we conclude that defendant's torture, false imprisonment, and threat counts "arose from separate conduct that the [trial] court could reasonably have concluded were undertaken pursuant to separate objectives." (*In re Raymundo M.* (2020) 52 Cal.App.5th 78, 95.) The trial court thus did not err by declining to stay the sentence on the false imprisonment and threat counts (counts 4 & 5).

The trial court also did not err because the offenses were separately punishable because they are "*divisible in time*, although directed to one object." (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738.) Defendant's act were sufficiently "'temporally separated'" to afford him the "'opportunity to reflect and to renew his . . . intent before committing the next'" offense, so they were distinct offenses. (*People v. Deegan* (2016) 247 Cal.App.4th 532, 542.)

Defendant's conduct underlying counts 4 and 5 (false imprisonment and criminal threats) occurred shortly after defendant began punching Doe and hitting her with the bat and HDMI cord. When Doe tried to escape, defendant grabbed her by the mouth and pulled her back inside the apartment. Once she was inside, defendant then threatened to kill the couple's children if Doe tried leaving again. Although these acts are close in

7

time, defendant had "an opportunity to reflect and renew [his] intent" between each act such that the trial court could reasonably find that they were divisible in time and thus separately punishable. (*People v. Louie* (2012) 203 Cal.App.4th 388, 399.)

The trial court could also reasonably find that the false imprisonment and threat counts were divisible in time from the torture count (count 1). Defendant's torture of Doe was extensive and lasted several hours. Before and after committing the false imprisonment and threat offenses, defendant beat Doe with his fists and an HDMI cord. He later hit her repeatedly with the bat. Then, because defendant wanted Doe to feel pain, he dragged her into the shower, turned on the cold water and aimed it at her face, and left her there for three hours after telling her that the water would keep her alive so that she could suffer.

During all of this, defendant had plenty of time to reflect and consider whether to stop the abuse. The trial court thus reasonably could find that counts 4 and 5 were "separate and distinct crimes" that were "divisible in time" such that they need not be stayed under section 654.

B. *Assembly Bill No. 518*

Defendant argues, and the People concede, that this case should be remanded under Assembly Bill No. 518 (Stats. 2021, ch. 441, § 1, eff. Jan. 1, 2022 (A.B. 518)), to allow the trial court to exercise its discretion and determine whether to stay the seven-years-to-life term for count 1 and instead impose one of the determinate terms on counts 2 or 3. We agree.

8

At the time of sentencing, the trial court was required under former section 654 to impose punishment under the provision that provided for the longest potential term of imprisonment when staying punishment for convictions based on the same act or omission. (§ 654; *People v. Sok* (2010) 181 Cal.App.4th 88, 100.)

In October 2021, after defendant was sentenced, A.B. 518 was enacted and became effective on January 1, 2022. A.B. 518 provides the sentencing court with discretion to choose any term stayed under section 654, thereby no longer requiring selection of the longest term. (§ 654, subd. (a); see Sen. Rules Committee, 3d reading analysis of A.B. 518 (2021-2022 Reg. Sess.) Aug. 18, 2021, pp. 1-2.)

As amended by A.B. 518, section 654 now provides that the trial court has the discretion to impose one of the determinate terms on counts 2 or 3 in lieu of the indeterminate term of seven years to life on count 1. (*People v. Sek* (2022) 74 Cal.App.5th 657, 673.) Because defendant's sentence was not final on January 1, 2022, when A.B. 518 took effect, he is entitled to its ameliorative effect. (*Ibid.*; see *In re Estrada* (1965) 63 Cal.2d 740, 745.) As a result, we agree with the parties that defendant's case must be remanded so that the trial court can exercise its new discretion granted by A.B. 518 to determine which of defendant's sentences should be stayed under section 654.

## IV.

## DISPOSITION

The judgment of conviction is affirmed.  Defendant's sentence on counts 1, 2, and 3 is vacated and the matter is remanded for a full resentencing.  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


CODRINGTON_____
Acting P. J.

We concur:


FIELDS_____
J.


RAPHAEL_____
J.