Filed 1/28/20 (unmodified opinion attached)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>BRADLEY DEWAYNE ROLES,<br><br>    Defendant and Appellant. | C086645<br><br>(Super. Ct. No. 16CF04343)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on January 8, 2020, be modified as follows:

Delete part II of the Discussion in its entirety and replace it with the following:

II

*Defendant May Not Be Punished For Stalking And Criminal Threats Under Section 654*

The stalking count was based on the 28 voice messages defendant left for Jennifer B. between August 31 and September 3, which included the 15 threatening messages supporting the criminal threats counts. Defendant argues he cannot be punished for both the stalking and criminal threats convictions under section 654 because "the crimes

1

comprise a single criminal act." The People respond that defendant may be punished for both convictions because he demonstrated different criminal objectives and intents during his course of conduct as follows: (1) stalking -- as "the prosecutor argued," his intent was "to annoy, harass, and disturb [Jennifer B.] and make her feel the same amount of pain he felt"; and (2) criminal threats -- "to place [Jennifer B.] in sustained fear for her life and the life of her children." The People further appear to argue, without any reasoning, analysis, or citation to the record, that the stalking and criminal threats offenses should be viewed as separate criminal acts for purposes of section 654 because the phone calls were made over a three-day period.[1]

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." (§ 654, subd. (a).) As this court explained in *Louie*: "The challenge in applying section 654 arises because, '[f]ew if any crimes . . . are the result of a single physical act.' [Citation.] Accordingly, courts have long recognized that the proscription against multiple punishment may also apply when a course of criminal conduct violates more than one statute. [Citation.] Where a defendant's crimes are the result of a course of criminal conduct, courts endeavor to determine whether the course of conduct is divisible, i.e., whether it constitutes more than one criminal act. [Citation.] A course of conduct will give rise to more than one criminal

---

[1]    The People filed a petition for rehearing arguing for the first time: "Any two of the 15 threatening voicemails were sufficient to constitute the crime of stalking. [Citation.] Any one of the 13 remaining threatening voicemails could have supported the criminal threats conviction. Thus, there was substantial evidence from which the trial court could have determined that [defendant's] course of conduct was divisible in time. And certainly [defendant's] conduct in leaving 15 threatening voicemails over a three-day period makes him more culpable than if he had ceased after leaving only two threatening voicemails."

act if the actions were incident to more than one objective. [Citation.] The point of determining whether a defendant had more than one criminal objective is to discover whether the defendant's multiple actions should be considered one criminal act or more than one criminal act for the purpose of section 654." (*People v. Louie* (2012) 203 Cal.App.4th 388, 396-397.)

"[W]here a course of conduct is divisible in time it may give rise to multiple punishment even if the acts are directive to one objective." (*People v. Louie*, *supra*, 203 Cal.App.4th at p. 399.) "This is particularly so where the offenses are temporally separated in such a way as to afford the defendant opportunity to reflect and to renew his or her intent before committing the next one . . . ." (*People v. Gaio* (2000) 81 Cal.App.4th 919, 935.) Thus, "[i]f the separation in time afforded [a] defendant[] an opportunity to reflect and to renew [his or her] intent before committing the next crime, a new and separate crime is committed." (*Louie*, at p. 399.)

Moreover, " '[i]f a course of criminal conduct causes the commission of more than one offense, each of which can be committed without committing any other, the applicability of section 654 will depend upon whether a separate and distinct act can be established as the basis of each conviction.' " (*People v. Beamon* (1973) 8 Cal.3d 625, 637.)

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) We view the evidence favorably to support the judgment and presume every factual finding that could reasonably be deduced from the evidence. (*Id.* at pp. 1312-1313.)

Stalking is defined as, "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible

threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . ." (§ 646.9, subd. (a).) The prosecution charged defendant with section 646.9, subdivision (b), which provides: "Any person who violates subdivision (a) when there is a temporary restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years." (§ 646.9, subd. (b).)

As delineated in section 646.9, subdivision (a), stalking "addresses two distinct behaviors" -- repeated following and harassment. (*People v. Heilman* (1994) 25 Cal.App.4th 391, 399.) Harassment was the basis for the stalking charge here; there were no allegations of repeated following. Harassment is defined as "engag[ing] in a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, torments, or terrorizes the person, and that serves no legitimate purpose." (§ 646.9, subd. (e).) Course of conduct is defined as "two or more acts occurring over a period of time, however short, evidencing a continuity of purpose." (§ 646.9, subd. (f).)

Here, the acts that constituted making a criminal threat (i.e., the 15 threatening voice messages) cannot be separated from defendant's course of conduct in stalking Jennifer B. Both crimes were based on the same phone calls and voice messages. As we explained *ante*, defendant may be convicted of only one criminal threats count because Jennifer B. testified about her fear after hearing *all* of the messages, indicating it was the whole of the messages that placed her in sustained fear. We thus find no substantial evidence that defendant's acts supporting the stalking conviction were independent of the acts supporting the criminal threats conviction -- i.e., no " 'separate and distinct act can be established as the basis of each conviction.' " (*People v. Beamon*, *supra*, 8 Cal.3d at p. 637.) Further, because the phone calls were not separate *criminal* acts, it is irrelevant whether defendant had an opportunity to reflect between making each phone call. (See *People v. Louie*, *supra*, 203 Cal.App.4th at p. 399 ["[i]f the separation in time afforded

4

[a] defendant[] an opportunity to reflect and to renew [his or her] intent before committing the next crime, a new and separate crime is committed"].)

If there was evidence in the record that Jennifer B. sustained fear from individual voice messages, such that some of the threatening voice messages could apply to the stalking conviction and others could support the criminal threats conviction, the People's position might have merit. That is not the case before us today.

We also find no substantial evidence supporting a conclusion that defendant harbored separate intents or objectives. Our review of the record reveals the phone calls were incident to only one objective -- to place Jennifer B. in fear of losing her life or children because defendant wanted her to experience what he was feeling. The People fail to present any evidence by citation to the record showing another intent.

We thus find that section 654 applies to prohibit separate punishments for the stalking and criminal threats convictions.

There is no change in judgment. Respondent's petition for rehearing is denied.

BY THE COURT:


 /s/
Robie, Acting P. J.


 /s/
Mauro, J.


 /s/
Duarte, J.

5

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

| | |
|---|---|
| THE PEOPLE, | C086645 |
| Plaintiff and Respondent, | (Super. Ct. No. 16CF04343) |
| v. | |
| BRADLEY DEWAYNE ROLES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Butte County, Clare Keithley, Judge.  Reversed in part and affirmed in part.

Tyrone Sandoval, Laurel Thorpe, and Jacquelyn Larson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Daniel B. Bernstein and Keith P. Sager, Deputy Attorneys General, for Plaintiff and Respondent.

After a court trial, the court found defendant Bradley D. Roles guilty of ten counts of making criminal threats (nine counts against Jennifer B. and one count against Heather S.), one count of stalking, and one count of making annoying phone calls.  Defendant appeals contending:  (1) he can be convicted of only one criminal threats charge against

1

Jennifer B. because she heard all the threats at the same time and experienced a single period of sustained fear; (2) he cannot be convicted of a criminal threats charge against Heather S. because there is insufficient evidence to show he intended for Jennifer B. to relay the threats to Heather S.; (3) the criminal threats punishment should be stayed under Penal Code[2] section 654; and (4) he did not knowingly and intelligently waive his right to a jury trial. We agree with defendant's first three contentions but disagree with the fourth. Accordingly, we reverse nine criminal threats convictions and stay the punishment on the remaining criminal threats conviction. In all other respects, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Defendant and his wife were involved in a family law matter concerning divorce, child custody, and a domestic violence restraining order. Heather S. represented defendant's wife and the court appointed Jennifer B. to represent the couple's minor child.

Before the court appointed Jennifer B., defendant had custody of the minor and his wife had visitation. Within the first week of Jennifer B.'s representation, defendant sporadically called Jennifer B. in a concerning way. Jennifer B. was concerned about defendant's behavior and she feared he might be alienating the minor against his wife. Jennifer B. recommended and the court granted the parents shared custody of the minor.

After the custody change, defendant made angry phone calls and left messages for Jennifer B. threatening to report her and Heather S. to the State Bar of California. Later, defendant called Jennifer B. and apologized for losing his temper. Additionally, defendant texted harassing messages to Heather S. As the family law matter proceeded, defendant's messages to Jennifer B. and Heather S. became more harassing and

---

**2**     All further section references are to the Penal Code unless otherwise specified.

threatening. At one point, Jennifer B. and Heather S. notified the family law court about the messages.

On April 13, 2016,[3] the court heard evidence from Jennifer B. and Heather S. about defendant's communications and ordered defendant, who was present, to contact Jennifer B. and Heather S. only during business hours and about legitimate matters related to the case. During the same hearing, the court accepted Jennifer B.'s recommendation on behalf of the minor and granted defendant's wife sole legal and physical custody and defendant supervised visits of the minor.

Despite the court order, defendant continued to send threatening messages to Jennifer B. and Heather S. Two hours after the court order, defendant resumed texting Heather S. Defendant texted Heather S. 497 times from April 13 through June 13, with most messages violating the court order. Defendant also continued to leave Jennifer B. harassing voice mails and pushed court documents containing his handwritten notes through the mail slot at her office.

In August, defendant requested an emergency hearing. After the court reprimanded defendant for calling an emergency hearing when there was no change in circumstances of the case, defendant left death threats on Jennifer B.'s voice mail and did not call back to apologize.

The threats relevant to the crimes charged in this case started on August 31 when defendant left Jennifer B. six messages. Those messages included, among other threats, threats against Jennifer B.'s life: "you'll see a Dad who plays dirty and you'll see what happens. Before that happens you'll be six foot under, that's for God damn sure." "I'll fuckin' kill your ass you son of a bitch. I'll fuckin' barbecue you before you get away

---

[3] All further date references are to 2016 unless otherwise specified.

3

with what you did to my fuckin' son.  You're a dead mother fucker, I promise you that you son of a bitch."

On September 1, defendant left 11 messages on Jennifer B.'s voice mail.  These messages included more threats on Jennifer B.'s life, as well as threats directed at Heather S.'s life and Jennifer B.'s children.  The threats to Jennifer B. included, but were not limited to:  "[y]ou know maybe you need one of your kids fuckin' taken out to see what life it's [sic] like without your fuckin' kids."  In one message, defendant said "I'll take one of your sons that's a kid."  This message concerned Jennifer B. because her three female children have traditionally male names.  As to Heather S., defendant said: "[w]e'll file a lawsuit today against Butte County, and you, and Heather [S.].  We'll see if you get away with it.  I promise you, you son of a bitch, I will take you down if I have to fill your ass full of holes myself.  Before you three get away with what you did, I will kill every fuckin' one of you, that's a promise."  Defendant left three more messages on September 2 and several more messages on September 3, all of which similarly threatened Jennifer B.'s life and her children.

Jennifer B. did not hear these messages until she returned to her office and after they were all received and recorded on her voice mail.  She listened to them all at once.  In the past, Jennifer B. deleted messages from defendant, but Jennifer B. listened to these messages more carefully because "they were different in nature."  "He repeatedly stated that the -- he was going to play dirty, he was going to kill me, he had stated in one of the messages that he was going to kill [his wife].  He talked about taking one of my children since I had taken one of his.  But there were repeated threats of killing me, burying me, the way he would kill me, beating me half to death.  So that was very different."  Jennifer B. immediately contacted the police and Heather S. and played the messages for Heather S.  Jennifer B. and Heather S. both testified they were in fear after hearing the messages.

Defendant testified on his own behalf at trial.  Defendant described the voice mails he left for Jennifer B. as an "emotional outburst" and explained the voice mails "had

4

nothing to do with Heather [S.]." When asked whether he knew Jennifer B. and Heather S. were sharing information about his communications with each other at the time of the April 13 hearing, defendant replied: "I didn't know about that no. They've never -- didn't know anything about them sharing information." As to his intent relating to the voice mails, he testified he "wanted them to understand what they put [him] and [his] son through."

DISCUSSION

Defendant contends he may be convicted of only one criminal threats charge against Jennifer B. because she experienced only one period of sustained fear and he cannot be convicted of a criminal threats charge against Heather S. because he did not intend the threats to be conveyed to her. We agree.

I

*Sufficiency Of The Evidence*

We review sufficiency of the evidence challenges for substantial evidence: " ' "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." ' [Citation.] '[The] appellate court must view the evidence in the light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.] 'Evidence is sufficient to support a conviction only if it is substantial, that is, if it " 'reasonably inspires confidence' " [citation], and is "credible and of solid value." ' " (*People v. Fromuth* (2016) 2 Cal.App.5th 91, 103-104.) Before a verdict may be set aside for insufficiency of the evidence, a party must demonstrate " 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conviction].' " (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)

Section 422 provides five elements: "(1) that the defendant 'willfully threaten[ed] to commit a crime which will result in death or great bodily injury to another person,'

5

(2) that the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out,' (3) that the threat -- which may be 'made verbally, in writing, or by means of an electronic communication device' -- was 'on its face and under the circumstances in which it [was] made, . . . so unequivocal, unconditional, immediate, and specific as to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat,' (4) that the threat actually caused the person threatened 'to be in sustained fear for his or her own safety or for his or her immediate family's safety,' and (5) that the threatened person's fear was 'reasonabl[e]' under the circumstances." (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.)

A

*Defendant May Be Convicted Of Only One Criminal Threats Charge Against Jennifer B.*

Defendant contends he may be convicted of only one criminal threats charge against Jennifer B. because she heard all the messages at one time and experienced a single period of sustained fear. The People assert the court properly convicted defendant of nine criminal threats charges against Jennifer B. because the court reasonably determined different threats caused separate periods of sustained fear. We agree with defendant.

"[S]ection 422 authorizes only one conviction and one punishment per victim, per threatening encounter during which the victim suffers a single period of sustained fear." (*People v. Wilson* (2015) 234 Cal.App.4th 193, 202.) Sustained fear must occur over "a period of time that extends beyond what is momentary, fleeting, or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) Courts have held , for instance, 15 minutes satisfies the sustained fear requirement. (*Ibid.*) In addition, sustained fear must be objectively and subjectively reasonable. (*In re Ricky T.* (2001) 87 Cal.App.4th 1132, 1140 ["A victim must actually be in sustained fear, and the sustained fear must also be reasonable under the circumstances"].)

6

There is no evidence Jennifer B. experienced more than one period of sustained fear. She did not testify her fear increased or changed from one message to the next. While the prosecution asked Jennifer B. how she felt after she heard the messages, it failed to elicit testimony about her feelings after listening to each message or group of messages. Instead, Jennifer B. testified about her fear after hearing *all* of the messages, indicating it was the whole of the messages that placed her in sustained fear. Indeed, Jennifer B. found it notable that these threats taken together differed from defendant's previous threats given their content and his failure to apologize after making them. At sentencing, the court discussed why it believed Jennifer B.'s fear reasonably could have changed when she listened to the messages. However, no *evidence* demonstrated the character and nature of her fear actually differed or changed from one voice message to the next.[4]

Accordingly, substantial evidence does not support eight of defendant's nine convictions for criminal threats against Jennifer B.

B

*Defendant May Not Be Convicted Of A Criminal Threats Charge Against Heather S.*

Defendant contends he cannot be convicted of a criminal threats charge against Heather S. because she was not the recipient of the messages and there is no evidence he intended Heather S. to hear the messages. The People assert there is substantial evidence to show defendant intended Jennifer B. to relay the threats to Heather S. We agree with defendant.

---

[4]    While defendant relies on *Wilson*, we do not base our conclusion on the reasoning of that case. There, the victim testified to being in two different types of fear at different times, during one uninterrupted encounter. (*People v. Wilson*, *supra*, 234 Cal.App.4th at p. 197.) Here, there is a more fundamental problem with defendant's convictions in that the victim did not testify to more than one period of sustained fear.

7

"The kind of threat contemplated by section 422 may as readily be conveyed by the threatener through a third party as personally to the intended victim. Where the threat is conveyed through a third party intermediary, the specific intent element of the statute is implicated. Thus, if the threatener intended the threat to be taken seriously by the victim, he must necessarily have intended it to be conveyed." (*In re David L.* (1991) 234 Cal.App.3d 1655, 1659.)

In *Ryan D.*, a minor turned into his art class a painting of him shooting an officer in the head. (*In re Ryan D.* (2002) 100 Cal.App.4th 854, 857.) The officer depicted in the painting had cited the minor earlier that month for possession of marijuana. (*Ibid.*) Despite the minor admitting it was reasonable to expect the officer would see the painting, the court concluded there was insufficient evidence to prove the minor specifically intended the painting be shown to the officer. (*Id.* at pp. 863-864.)

In *Felix*, the defendant told his psychotherapist he wanted to kill the victim and the therapist told the victim. (*People v. Felix* (2001) 92 Cal.App.4th 905, 908-909.) The court concluded the defendant's statement did not support a criminal threats charge. (*Id.* at p. 908.) The court determined there was insufficient evidence the defendant intended the threat to be communicated to the victim, even though the defendant specifically said he wanted to kill the victim. (*Ibid.*) The court noted, had the defendant said, " ' you can tell [the victim] that I am going to kill her,' [the defendant] would undoubtedly be in violation of section 422." (*Felix*, at p. 913.)

This case is like *Ryan D.* and *Felix* -- there is no evidence defendant intended Jennifer B. to communicate the voice messages to Heather S. Defendant testified he did not know Jennifer B. and Heather S. communicated with each other. The People counter defendant knew Jennifer B. and Heather S. communicated with each other because he was in court when they presented evidence of his communications with them to the court, and Heather S. "testified that [defendant] was aware that she and [Jennifer B.] were sharing [his] communications with one another." As we explain, without more, these

8

facts do not meet the substantial evidence burden necessary to find beyond a reasonable doubt that the specific intent element of the crime was met. (*In re David L.*, *supra*, 234 Cal.App.3d at p. 1659 [specific intent required].)

Defendant's presence at the court hearing demonstrates only that he was aware Jennifer B. and Heather S. shared his communications with the court, not that they shared them with each other. Heather S.'s testimony that she believed defendant knew she and Jennifer B. were sharing communications from him with each other does not assist in establishing that defendant *intended* for Jennifer B. to convey the threatening messages to Heather S. either. In the 28 messages defendant left on Jennifer B.'s phone, defendant threatened Heather S. three times without ever directing Jennifer B. to tell Heather S. of the threats. Defendant further testified the voice mails "had nothing to do with Heather [S.]." And Heather S. acknowledged defendant had her phone number and contacted her personally several times in a threatening manner, indicating he generally communicated with Heather S. directly and not through Jennifer B.

The People rely on *David L.* for support. (*In re David L.*, *supra*, 234 Cal.App.3d at p. 1655.) In *David L.*, the victim and a third party were standing near lockers at school when the defendant approached them with a belt wrapped around his fist, pushed the victim against a locker, and swung at the victim. (*Id*. at p. 1658.) The victim swung back, knocking the defendant to the ground. (*Ibid*.) Later, the defendant called the third party and told her he was angry about the incident and to listen. (*Ibid*.) She heard a metallic clicking noise. (*Ibid*.) The defendant told her the sound was a gun and he was going to shoot the victim. (*Ibid*.) She told the victim about the threat the following day. (*Ibid*.) The court found there was sufficient evidence the defendant intended the third party to act as an intermediary and tell the victim about the threat. (*Id*. at pp. 1659-1660.)

Defendant's case is different from *David L.* because in that case the defendant, the third party, and the victim were all present during the initial incident. (*In re David L.*, *supra*, 234 Cal.App.3d at p. 1658.) The defendant called the third party specifically

9

about that incident the very next day and threatened only the victim. (*Ibid*.) Here, there is no evidence of an incident where defendant, Jennifer B., and Heather S. were all present. The only evidence in the record of defendant, Jennifer B., and Heather S. being together is during a court hearing in August. And there is no evidence linking the prior court hearing with the threatening messages. Further, defendant's threats were predominantly directed at the recipient of the message, Jennifer B.

There is no substantial evidence to support the conclusion defendant specifically intended Jennifer B. to communicate the voice messages to Heather S. Accordingly, the criminal threats conviction as to the communications relating to Heather S. must be reversed.

II

*Defendant May Not Be Punished For Stalking And Criminal Threats Under Section 654*

The stalking count was based on the 28 voice messages defendant left for Jennifer B. between August 31 and September 3, which included the messages supporting the criminal threats counts. Defendant argues he cannot be punished for both stalking and criminal threats under section 654 because "the crimes comprise a single criminal act." The People respond that defendant may be punished for both convictions because he demonstrated different criminal objectives and intents during his course of conduct as follows: (1) stalking -- as "the prosecutor argued," his intent was "to annoy, harass, and disturb [Jennifer B.] and make her feel the same amount of pain he felt"; and (2) criminal threats -- "to place [Jennifer B.] in sustained fear for her life and the life of her children."

Stalking is defined as, "Any person who willfully, maliciously, and repeatedly follows or willfully and maliciously harasses another person and who makes a credible threat with the intent to place that person in reasonable fear for his or her safety, or the safety of his or her immediate family is guilty of the crime of stalking . . . ." (§ 646.9 subd. (a).) The prosecution charged defendant with section 646.9, subdivision (b), which provides: "Any person who violates subdivision (a) when there is a temporary

10

restraining order, injunction, or any other court order in effect prohibiting the behavior described in subdivision (a) against the same party, shall be punished by imprisonment in the state prison for two, three, or four years."

"The question whether section 654 is factually applicable to a given series of offenses is for the trial court, and the law gives the trial court broad latitude in making this determination. Its findings on this question must be upheld on appeal if there is any substantial evidence to support them." (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1312.) We view the evidence favorably to support the judgment and presume every factual finding that could reasonably be deduced from the evidence. (*Id.* at pp. 1312-1313.)

Section 654 provides in pertinent part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision." As this court explained in *Louie*: "The challenge in applying section 654 arises because, '[f]ew if any crimes . . . are the result of a single physical act.' [Citation.] Accordingly, courts have long recognized that the proscription against multiple punishment may also apply when a course of criminal conduct violates more than one statute. [Citation.] Where a defendant's crimes are the result of a course of criminal conduct, courts endeavor to determine whether the course of conduct is divisible, i.e., whether it constitutes more than one criminal act. [Citation.] A course of conduct will give rise to more than one criminal act if the actions were incident to more than one objective. [Citation.] The point of determining whether a defendant had more than one criminal objective is to discover whether the defendant's multiple actions should be considered one criminal act or more than one criminal act for the purpose of section 654." (*People v. Louie* (2012) 203 Cal.App.4th 388, 396-397.)

The criminal threats and stalking convictions arise from the same course of conduct; that is, the voice mails defendant left for Jennifer B. between August 31 and

11

September 3.  Our review of the record reveals the phone calls were incident only to one objective -- to place Jennifer B. in fear of losing her life or children because defendant wanted her to experience what he was feeling.  The People fail to present any evidence by citation to the record showing another intent.  We thus find that section 654 applies to prohibit separate punishments for the stalking and criminal threats convictions.

### III

### *Jury Trial Waiver*

Defendant contends he did not make a knowing and intelligent waiver of his right to a jury trial.  The People argue the record demonstrates defendant had extensive discussions about court and jury trials and that he did knowingly, intelligently, and voluntarily waive his right to a jury trial.  We agree with the People.

### A

### *Background*

At the trial readiness conference where defendant eventually waived his right to a jury trial, defense counsel said that defendant, the trial judge, and defense counsel had "extensive discussion[s]" about a court trial and a jury trial at a previous hearing.[5] Defense counsel indicated he spoke with defendant more about the subject following that hearing and defendant was now prepared "to waive jury and to do this as a court trial." The court then trailed the matter until later that day so defense counsel and defendant could talk about the jury trial waiver.  When the matter was taken up again, the following took place on the record:

"THE COURT:  Again, [defendant], we're calling your case, and I have been told by the attorneys that you are going to waive your right to a court trial [*sic*].  [¶]  [Defense counsel], can you take that waiver for the Court?

---

[5]     The transcript of the previous hearing does not appear in the record.

12

"[DEFENSE COUNSEL]:  He's going to waive his right to a jury trial.

"THE COURT:  Waive your right to a jury trial?

"[DEFENSE COUNSEL]:  [Defendant], we've had a chance to talk about what a jury trial is; is that correct?

"THE DEFENDANT:  Yes.

"[DEFENSE COUNSEL]:  All right.  And you understand that you have a right to a jury trial, and you're willing to give that up; is that correct?

"THE DEFENDANT:  Yes.

"[DEFENSE COUNSEL]:  You're doing that freely and voluntarily; is that correct?

"THE DEFENDANT:  Yes.

"[DEFENSE COUNSEL]:  And that's after a number of times that you've had to discuss that matter, that particular matter, with me; is that correct?

"THE DEFENDANT:  Yes.

"[DEFENSE COUNSEL]:  All right.  I'll submit it, Your Honor.

"THE COURT:  Okay.  Do you have any questions about your right to a jury trial?

"THE DEFENDANT:  No, ma'am.

"THE COURT:  And you've had enough time to talk to [defense counsel] about waiving your right to a jury trial?

"THE DEFENDANT:  Yes, ma'am.

"THE COURT:  And having all that information in mind, do you now waive your right to a jury trial in this case?

"THE DEFENDANT:  Yes, ma'am.

"THE COURT:  And is that with your consent, [defense counsel]?

"[DEFENSE COUNSEL]:  It is."

## B

### *Defendant Waived His Right To A Jury Trial*

A criminal defendant has the constitutional right to a jury trial. (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166; U.S. Const., 6th Amend.; Cal. Const., art. I, § 16.) The defendant may waive his constitutional right to a jury trial, provided the waiver is " 'knowing and intelligent, that is, " ' "made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it," ' " as well as voluntary " ' "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.' " ' " [Citations.] '[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.' " (*Sivongxxay*, at p. 166.)

Here, defendant argues his purported waiver was not made knowingly and intelligently. Defendant argues he was not made aware of the nature of the right or the consequences of waiving it. Specifically, defendant asserts the trial court failed to advise him of the nature of his right to a jury trial and that a trial judge sitting alone would decide the case.

We are not persuaded that the trial court's failure to advise defendant of the specific aspects of a jury trial requires reversal. Our Supreme Court has "persistently declined to mandate any specific admonitions describing aspects of the jury trial right." (*People v. Daniels* (2017) 3 Cal.5th 961, 992 (lead opn.); *People v. Sivongxxay*, *supra*, 3 Cal.5th at p. 167 ["Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial"].) While *Sivongxxay* did provide general guidance for trial courts, the court was careful to emphasize that this "guidance is not intended to limit trial courts to a narrow or rigid colloquy" and noted, "[u]ltimately, a court must consider the defendant's individual circumstances and exercise judgment in deciding how best to ensure that a particular defendant who purports to waive a jury trial does so knowingly and

14

intelligently." (*Sivongxxay*, at p. 170.) The test of a valid waiver turns on whether the record affirmatively shows that the waiver is voluntary and intelligent under the totality of the circumstances. (*Id*. at pp. 166-167.)

Here, we conclude the totality of the circumstances demonstrates that defendant entered a knowing and intelligent jury trial waiver. The record shows defendant and his counsel had "extensive conversation[s]" about court and jury trials. During the waiver inquiry, defense counsel asked defendant if they spoke about the waiver "a number of times," and defendant responded, "Yes." Notably, defendant acknowledged he spoke about the meaning of a jury trial with his counsel as well and not just what it meant to waive the right to a jury.

Defendant's reliance on *Jones* is unfounded. (*People v. Jones* (2018) 26 Cal.App.5th 420.) In *Jones*, the court reversed the defendant's convictions and remanded the case for a new trial because the record did not affirmatively show the defendant provided a knowing, intelligent, and voluntary waiver of her right to a jury trial. (*Id*. at p. 423.) During the waiver, only the prosecutor asked the defendant if she understood her right to a jury trial, and whether she agreed to waive that right and have the trial judge, " 'sitting alone,' " " 'decide the case.' " (*Id*. at pp. 428, 435.) Further, there was no indication the defendant had any prior experience with the criminal justice system. (*Id*. at pp. 436-437.) The court held the defendant's "bare acknowledgment that she understood her right to a jury trial was inadequate." (*Id*. at p. 436.)

The facts here are distinguishable from *Jones*. Unlike in *Jones*, defendant's waiver inquiry was not limited to the prosecutor. In fact, both the court and defendant's counsel inquired into defendant's waiver. Further, the record shows defendant discussed at least three different times his waiver of a jury trial with his attorney, some of which included the court. Also, this was not defendant's first experience with the criminal justice system. Defendant argues he is unfamiliar with the criminal justice system but

concedes he has several misdemeanor convictions, spanning back to 1994, contradicting his assertion.

Accordingly, the record affirmatively demonstrates defendant provided a knowing and intelligent waiver of his right to a jury trial.

## DISPOSITION

Eight of the criminal threats convictions against Jennifer B. (counts 5, 6, 7, 8, 9, 10, 11, and 12 ) and the one against Heather S. (count 2) are reversed and the punishment for the remaining criminal threats conviction (count 4) is stayed under section 654.  In all other respects, the judgment is affirmed.  The trial court shall prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation.

 /s/  
Robie, Acting P. J.

We concur:

 /s/  
Mauro, J.

 /s/  
Duarte, J.

16